Hugh E. SPERRY, Regional Director of the Seventeenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

BUILDING MATERIAL AND CONSTRUCTION, ICE AND COAL DRIVERS, WAREHOUSEMEN AND YARDMEN LOCAL UNION NO. 659, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, Respondent.

Civ. No. 0205.

United States District Court
D. Nebraska.
Dec. 20, 1956.

---

4. Sacher v. United States, 1952, 343 U.S. 1, 72 S.Ct. 451, 469, 96 L.Ed. 717. Dissenting opinion.

Jacques Schurre, Atty. N. L. R. B., Theophil C. Kammholz, Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, Washington, D. C., and Martin Sachs, Chief Law Officer, N. L. R. B., Kansas City, Mo., for petitioner.

J. Taylor Greer (Woods, Aitken & Aitken), Lincoln, Neb., for charging parties.

David D. Weinberg, Omaha, Neb., for respondent.

DELEHANT, Chief Judge.

In this proceeding, brought under Section 10(l) of the National Labor Relations Act, as amended, Title 29 U.S. C.A. § 151 et seq., inclusive of Section 160(l) petitioner prays for an injunction, temporary in character, pending the final adjudication by National Labor Relations Board, herein referred to as the "Board", upon the charges pending before it which are next identified. As of July 11, 1956 Ready Mixed Concrete Products Company, and Reimers-Kaufman Concrete Products Company, respectively herein referred to as Ready Mixed and Reimers-Kaufman,

filed charges with the Board in which they asserted that respondent had engaged, and then was engaging, in unfair labor practices within the meaning of Section 8(b), subsections 4(A) and (B) of the Act, Title 29 U.S.C.A. § 158(b) (4) (A) and (B). After due notice to the respondent, hearing has been had and the proceeding has been submitted to the court upon the pleadings and the evidence and typewritten briefs of counsel for the parties.

Upon the final hearing before the court, petitioner introduced his evidence and rested; and respondent moved for the denial of the relief demanded and the dismissal of petitioner's petition for relief upon the broad ground of the inadequacy of petitioner's claim and evidence (the alleged deficiencies in which were exhaustively particularized in the motion); and thereupon elected to introduce no evidence or testimony. The proceeding, accordingly, is submitted to the court upon the petitioner's evidence, and tenders the question whether petitioner has made out a case under the statute for the temporary relief which he seeks.

Certain facts are admitted in the pleadings. These will first be mentioned briefly. They follow:

Petitioner is the Regional Director of the Seventeenth Region of the National Labor Relations Board and has instituted this proceeding on behalf of the Board. Respondent is an unincorporated association and is a labor organization within the meaning of Sections 2(5), 8(b), and 10(l) of the National Labor Relations Act, and is engaged within this judicial district in transacting business and promoting and protecting the interests of its employee members.

Jurisdiction of this proceeding is conferred upon this court by Section 10 (l) of the Act.

On or about July 11, 1956 Ready Mixed and Reimers-Kaufman, under the provisions of the Act, filed charges with the Board alleging, among other things, that respondent had engaged, and was

then engaging, in unfair labor practices within the meaning of Section 8(b), subsections (4) (A) and (4) (B) of the Act.

The charges last mentioned were referred to petitioner in his official capacity for investigation and he has investigated such charges.

At no time material herein has respondent been certified as the collective bargaining representative of the employees of either Ready Mixed or Reimers-Kaufman, pursuant to the provisions of Section 9 of the Act.

Since on or about June 21, 1956, respondent has been on strike against Ready Mixed and Reimers-Kaufman and has been picketing their several establishments in Lincoln where their respective production and maintenance employees are regularly on duty throughout the working day and where their delivery employees spend approximately 40% of their time.

At no time material herein has respondent had any labor dispute with Olson Construction Company, Wilson Construction Company and George Cook Construction Company (hereinafter respectively referred to as Olson, Wilson and Cook), or any of them, or the other employers engaged in the construction of the projects to which Ready Mixed and Reimers-Kaufman have been delivering concrete and other building materials.

Not explicitly admitted by respondent's answer, but formally admitted upon the trial for all of the purposes of the proceeding in this court only, are the petitioner's averments to the effect that Ready Mixed and Reimers-Kaufman are, severally, Nebraska corporations and engaged in Lincoln, Nebraska in the sale of Ready Mixed concrete and building materials; that during the year preceding the institution of this action Ready Mixed sold concrete valued at more than $1,990,000, of which more than $300,000 consisted of sales to persons engaged in interstate commerce, and that during the same period Reimers-Kaufman sold building materials valued at more than $2,400,000 of which more than $200,000 consisted of sales to persons engaged in interstate commerce.

■ It may be understood that petitioner's remaining allegations in his complaint are denied by respondent's answer. These include the averments of specific conduct on respondent's part basic to petitioner's demand for temporary injunctive relief. And it is in response to the factual controversy thus arising that the trial has been had which prompts the decision now announced. However, two preliminary considerations may appropriately be emphasized at this point. It is first repeated that the submission for the present ruling has been made upon evidence adduced by petitioner only. No factual dispute in the usual sense emerges from the trial. Nevertheless, the court has to be mindful of the factual issues made by the pleadings and to scrutinize the evidence in order to determine its credibility and probative significance and whether, if and to the extent that it be credible and of probative value, it is adequate to support petitioner's demand for protective relief. Secondly, it is recalled that under the applicable statute this court is not now trying, finally and on the merits, the issues of fact between Ready Mixed and Reimers-Kaufman, on the one hand, and respondent on the other. What this court must find, and all that it is required, or has jurisdiction in a proceeding of this nature to find, is whether petitioner in filing his petition here had reasonable cause to believe to be true the charges against respondent made by Ready Mixed and Reimers-Kaufman before the Board and now pending before such Board. If such reasonable cause be found to exist the propriety of the institution of this proceeding and petitioner's right to the relief for which he prays are sufficiently established. And that is true even though the Board in its final ruling upon the merits as between the actually litigating parties may hereaft-

er find for the respondent. It is only for the preservation of the positions of those parties pending that final ruling that this proceeding has been devised and is being prosecuted.

Mindful of the limited area of its inquiry, and upon the evidence before it, the court finds, and by formal findings of fact and conclusions of law now declares, that petitioner, at the time of filing this proceeding had, and now has, reasonable cause to believe the following asserted but controverted facts to be true:

Ready Mixed and Reimers-Kaufman now maintain, and for some years last past have maintained, in Lincoln, Nebraska, plants from which they deliver ready mixed concrete and other building materials to numerous customers engaged in the trade as building contractors, and to and upon numerous building construction projects in and within the vicinity of Lincoln, through the use of motor trucks operated by their respective employees. Projects to which such deliveries were being made in 1956 and at the times involved in the charges against respondent included the construction sites of Pershing Auditorium and Lincoln Clinic Building, of each of which Olson was the principal building contractor; University Hall at the University of Nebraska and an addition to the Nebraska State Hospital, with Wilson as the general contractor; and Kappa Sigma fraternity house at University of Nebraska for which Cook was the principal contractor.

On or about June 5, 1956, respondent formally demanded that Ready Mixed and Reimers-Kaufman severally recognize it as the collective bargaining representative of and for their employees, respectively, and enter into collective bargaining negotiations and collectively bargained agreements with it fixing wages, hours and other terms and conditions of employment of their respective employees. Ready Mixed and Reimers-Kaufman severally failed to comply with such demands and respondent persisted in the demands, and, on or about June 21, 1956, initiated and set on foot the strikes against Ready Mixed and Reimers-Kaufman, supra, which are still in progress.

In furtherance of its demands, and as an incident to the prosecution of the strikes, respondent since the inception of the strikes on or about June 21, 1956, has picketed on sundry occasions projects within Lincoln and its vicinity when trucks of Ready Mixed and Reimers-Kaufman, or of either of them, were making or attempting to make deliveries to such projects, and at other times. On occasion, too, since June 21, 1956, respondent has requested and appealed to employees of Olson, Wilson, Cook and other employers on such projects to quit work, and to refuse to handle, or work, on ready mixed concrete and other building materials supplied and delivered by Ready Mixed and Reimers-Kaufman, or either of them. In consequence of such picketing of construction projects and such requests and appeals work stoppages and refusals to handle or work on the products of Ready Mixed and Reimers-Kaufman, on the part of the employees of the employers whose projects have thus been picketed, have occurred, and respondent has induced and encouraged employees of Olson, Wilson and Cook and of other employers, to engage in strikes or concerted refusals in the course of their employment to use or process or otherwise to handle or work on goods, articles, materials or commodities or to perform services.

The respondent's activities and conduct reflected in the immediately preceding paragraph occurred largely, and almost, but not quite, entirely, during the last ten days of June in 1956 and thus within the first ten days of the duration of the strikes against Ready Mixed and Reimers-Kaufman. Evidence of such conduct by or in behalf of respondent after July 1, 1956 is very slight, though, so far as it extends, convincing.

The activities and conduct on the respondent's part just discussed had and have a close, intimate and substantial relation to trade, traffic and commerce between and among the several states, and a tendency to lead, and do lead, to labor disputes burdening and obstructing commerce and its free flow.

Among the objects of such activities and conduct of respondent are and have been (a) to force or require Olson, Wilson and Cook and other employers to cease to use, handle or otherwise deal in the products of, and to cease to do business with, Ready Mixed and Reimers-Kaufman, and (b) to force or require Ready Mixed and Reimers-Kaufman severally to recognize or bargain with respondent as the collective bargaining representative of their respective employees, despite its failure to procure or have certification as such representative under Section 9 of the Act.

It may be understood from the facts as found that the court further considers and finds that, regard being had to the proportion of their time spent upon their own employers' respective plant sites, supra, the delivery department employees of the several struck producers, Ready Mixed and Reimers-Kaufman could effectively have been apprised by respondent of the strikes at their several plants by picketing only at the several plant sites themselves. Picketing at the project sites of customers of their products was wholly unnecessary for that purpose.

It is also found that the picketing at the project sites of the customers of the struck employers was not always limited, in the way of physical area, to the place where the delivery trucks of Ready Mixed or Reimers-Kaufman, as the case might be, stood, but on some occasions extended generally over a much larger portion, or all, of the frontal lines of the project sites. Nor, in point of time, was it invariably limited to the duration of the stay at the project site of the delivery trucks. Generally,

it was so limited but on at least one occasion it was not.

It may fairly be anticipated that, unless restrained or enjoined by this court, respondent will continue, renew or repeat its activities and conduct hereinbefore discussed.

To repel certain of the foregoing factual findings, respondent advances in the submission of this proceeding certain arguments which may be noted briefly but need not be discussed exhaustively.

It is suggested earnestly that the evidence is inadequate to support the attribution to respondent of the several activities and items of conduct thus mentioned. The suggestion is not well taken. The timing of the picketing of the projects of building contractors for which Ready Mixed and Reimers-Kaufman were suppliers of material was too sharply articulated with the strikes to be explained as coincidental. The two events occurred together. Then, while it is true that not all participating pickets were individually indentified, and by name connected, with respondent, some of them were. Besides, on occasion, striking employees of the struck employers, or one of them, were identified as present during some of the occurrences. The pickets also wore vestlike signs bearing printed legends unmistakably associating their presence with the strike, and, more to the point, with the respondent by the substance of its name and its local number. Finally, there is evidence, which the court believes to be both competent and relevant, of the forecasting by a representative of the respondent, at a prestrike laborers' meeting, both of the impending strike and of the use in and of its objectives of picketing at the job sites of customers of the strikebound employers.

Argument is offered also upon the undoubtedly correct factual premise that most, though something less than all, of the picketing of the projects of building contractor patrons of the

struck producers was done during the first week of the strikes. That circumstance has had the court's careful consideration. But it is not regarded as decisive in respondent's favor. To begin with, there is evidence of some, though admittedly rare, picketing of that sort extending beyond that week and into July, 1956. Then, the filing of the charges before the board by Ready Mixed and Reimers-Kaufman occurred very early, i. e. on July 11, 1956; and that filing offered the deterring threat of precisely such a proceeding as this one and might be expected to serve as a factor at least briefly interruptive of the outside picketing. And this proceeding was filed on August 8, 1956. Events, therefore, succeeded each other quite rapidly after the onset of the strikes. But, to the court, it appears to be highly persuasive that, even upon the trial, the respondent does not acknowledge its responsibility for, or the impropriety of, the outside project site picketing. It maintains that it has neither done nor sponsored, anything wrong. That position appears effectively to preclude the inference that it had repented of, and definitely and permanently abandoned, the activities and conduct of which the court has here found it to be guilty. Respondent's entire bearing towards the challenged subject is rather that of an entity which, as a matter of policy, has concluded that it is expedient for it to refrain, while under fire, from conduct which it believes it has the right to practice.

What has just been said has a bearing also upon the likelihood of repetition or renewal, in default of an injunction, of the challenged conduct.

Respondent denies that the evidence warrants the finding of such likelihood. But in the light of the record before it, the court is wholly unable to agree with that position, and is persuaded that, if protective injunctive relief were now denied, a resumption of the project site picketing, and probably also the introduction of other techniques of harassment, would almost certainly ensue.

Though challenged by respondent, the impact upon interstate commerce of the respondent's conduct as charged and found, appears to be too clear and certain to justify discussion.

Of an argument advanced against the allowance of the relief sought, that the evidence fails to disclose the traditional grounds of equitable intervention, it may sufficiently be observed that the Act itself prescribes with fair adequacy the grounds for the allowance of such relief in a proceeding of this character. Those grounds appear to the court clearly to exist and to be of sufficient moment and urgency to warrant and require the entry of the order sought.

Responsive to the findings of fact made in the proceeding and to a large extent reflected in this memorandum; and upon the basis of the conclusions of law formally filed herewith, an order is being made and given granting the protective injunctive relief provided in appropriate circumstance under the Act and sought in the petition. To eliminate any procedural question upon the point, a further order is being made and given formally denying and overruling the respondent's motion for dismissal orally tendered at the close of the reception of evidence.