Robert E. GREENE, Acting Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

BANGOR BUILDING TRADES COUNCIL, AFL–CIO; Hoisting and Portable Operating Engineers, Local 4, International Union of Operating Engineers, AFL–CIO; Local 1377, International Hod Carriers', Building & Common Laborers' Union of America, AFL–CIO, Respondents.

Civ. No. 1105.

United States District Court
D. Maine, N. D.

Ruling Aug. 18, 1958.
Supplemental Ruling, Findings of Fact
and Order Aug. 20, 1958.

James F. Foley, Acting Regional Director, Washington, D. C., for N. L. R. B.

Clair L. Cianchette, Pittsfield, Me., for J. R. Cianchette.

Sidney W. Wernick, Portland, Me., for Bangor Building Trades Council, AFL-CIO and Local 1377, International Hod Carriers', Building & Common Laborers' Union of America, AFL-CIO.

Carl Randall, Jr., Manchester, N. H., for Davison Co., Inc.

James M. Walsh, South Boston, Mass., for Local 4, International Union of Operating Engineers, AFL-CIO.

Oral Ruling

The following oral ruling was delivered from the bench on Aug. 18, 1958.

GIGNOUX, District Judge.

■ In view of the urgency of this proceeding and the mandate of the statute, the Court will announce its ruling at this time and indicate very briefly its reasons therefor. The Court also wishes to state that in a matter of this importance it would not feel that it should thus rule from the bench had it not had occasion very recently to review the problems presented to the Court upon a petition for an injunction under Section 10 (*l*) of the National Labor Relations Act, 29 U.S.C.A. § 160(*l*) where a violation of Section 8(b) (4) (A) of the Act, 29 U.S.C.A. § 158(b) (4) (A), is charged and also had the Court not had an opportunity over the weekend to review and consider both the evidence and the authorities which have been called to the Court's attention by counsel.

The Court will note then that this is a petition by the Regional Director of the National Labor Relations Board for a temporary injunction under Section 10 (*l*) of the National Labor Relations Act, as amended, to restrain a violation of Section 8(b) (4) (A) of the Act. In Alpert v. Truck Drivers, Warehousemen and Helpers Local 340, D.C.Me.1958, 161 F.Supp. 86, 89, this Court issued an opinion and order under date of April 1, 1958, in which it reviewed its conception of the responsibility of the District Court in Section 10(*l*) proceedings. In the course of that opinion, this Court stated that, " * * * the role of a district court ruling on a petition under §

10(*l*) of the Act must be distinguished from that of the National Labor Relations Board ruling on a complaint under § 10(a)–(d) and from that of a circuit court acting on a petition to review or enforce a Board order under either § 10(e) or (f). * * *" The Court went on to say that "* * * by the terms of § 10(*l*) a district court's function is limited to ascertaining whether the Regional Director has 'reasonable cause to believe' that the charges filed are true, and to granting such injunctive relief 'as it deems just and proper.'" The Court further stated that "The requirement of § 10(*l*) that the Regional Director must have 'reasonable cause to believe' that a charge is true is met by a showing of a reasonable probability that the petitioner is entitled to final relief * * *"; that "* * * credible evidence, establishing a prima facie case, is sufficient * * *"; and that "* * * it is quite clear from the language of § 10(*l*) and from the numerous cases that have interpreted this section that it is not necessary to the granting of the temporary injunction sought by the petitioner that this Court find that the charges filed are true, or that, in fact, a violation of the Act has occurred. The final determination of such matters is for the National Labor Relations Board, subject to review by the Courts of Appeal if and when enforcement or review is sought."

The principles thus stated by this Court so recently are those which have guided it in approaching the merits of the present controversy. Turning to those merits then, the first question which is presented is whether upon the record before it, the Regional Director has "reasonable cause to believe" that a violation of Section 8(b) (4) (A) of the Act exists.

The pertinent language of Section 8 (b) (4) (A) is as follows: "It shall be an unfair labor practice for a labor organization * * * to engage in * * a strike * * * where an object thereof is * * * forcing or requiring any employer * * * or other person,

* * * to cease doing business with any other person * * *." Applied to the present situation, the issue then becomes as to whether the record in this case shows that the Regional Director has reasonable cause to believe that an object of this strike was to force or require Davison to cease doing business with Cianchette. The respondents' contention is that such was not the object of this strike; that the object of the strike was to compel Davison Construction Company to comply with the provisions of Paragraph 26 of his Agreement [1] with the respondent Local 4, by insuring that union conditions are met throughout the entire project for which Davison holds the prime contract. The testimony of respondents' witnesses most certainly tends to bear out respondents' contention in this respect. The testimony of petitioner's witnesses, on the other hand, is directly in conflict with that of respondents' witnesses and tends to establish that, if not the *sole* object, at least *an* object of this strike was to compel Davison to cease doing business with its nonunion sub-contractor, J. R. Cianchette.

This Court, being presented with a conflict between the testimony of the two sets of witnesses, does not feel that it can properly resolve the questions of credibility in any ultimate manner in this proceeding. As previously indicated, this Court's responsibility is limited to a determination as to whether, upon the entire record, the Regional Director has reasonable cause to believe that an object of the strike was to compel Davison to cease doing business with Cianchette. On the factual issue thus presented, the Court has concluded that the Regional Director has reasonable cause to believe that such was an object of the strike. On the authority of National Labor Relations Board v. Denver Building and Construction Trades Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L. Ed. 1284, such an object would cause the strike activity to constitute a violation of Section 8(b) (4) (A) of the Act.

■ The Court has been concerned as to the effect of Paragraph 26 of the Agreement, which the Court can only construe as an undertaking by the employers signatory to the Agreement that they will require sub-contractors to conform to union terms and conditions. In view of the recent decision of the United States Supreme Court in the so-called "hot cargo" cases, Local 1976, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. National Labor Relations Board, 1958, 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186, this Court has concluded that even as so construed, Paragraph 26 of the Agreement cannot operate as a defense to a charged violation of Section 8(b) (4) (A) resulting from conduct which, but for the existence of the contract provision, would be violative of the Act.

■ The second question presented to the Court in a Section 10(l) proceeding is as to whether the granting of the injunctive relief requested is "just and proper." Having concluded that the Regional Director has reasonable cause to believe that a Section 8(b) (4) (A) violation exists upon a national defense project of the nature here concerned, the Court feels that it would be remiss in the discharge of its responsibilities were it not to grant such relief as is necessary to insure that the charged violations will not continue.

The Court wishes to supplement its ruling in this limited respect. The Court omitted to refer to respondent's contention that the petitioner has failed in this case to sustain the allegations of Paragraph 6 of the petition that the charges were referred to the petitioner for investigation and were investigated by him and under his supervision. The Court's conclusion with respect to this contention is that the Court's determination as to whether such an investigation has been completed must necessarily be based

---

1. Paragraph 26. It is understood that the agreement binds all the contractors as well as the general sub-contractors.

upon the evidence presented by the petitioner in the course of the hearing. And without commenting upon the completeness of the investigation, the Court is of the opinion that the petitioner has sustained whatever burden may be his in that respect.

### Supplemental Ruling

The following supplemental ruling was delivered orally on Aug. 20, 1958.

GIGNOUX, J.

At the conclusion of the hearing in this matter on August 18, 1958, the Court requested counsel for the petitioner to submit proposed findings of fact and conclusions of law and a proposed form of order in accordance with the ruling announced by the Court from the bench at that time.

Following the hearing the Court arranged to confer with counsel for the petitioner and the respondents concerning the proposed form of such findings, conclusions and order. At this conference three questions arose with respect to the proposed form of order upon which the Court feels that it should comment briefly upon the record.

First, counsel for the petitioner presented to the Court an order purporting to enjoin the respondents from inducing the employees of Davison and the sub-contractors involved to engage in a strike where an object thereof is to force Davison or any other person to cease doing business with Cianchette. Respondents contended that the proposed form of order was too broad in that it would enjoin respondents' activities on jobs other than the Dow Housing Project, respondents' activities in regard to this project being the sole basis for the unfair labor practice alleged in the petition and there being no evidence in the record of similar activities by the respondent in regard to any other projects. Since the petition in this case was based solely upon the respondents' actions on the Dow Housing Project job and the record is barren of any evidence of similar actions by respondents on any other job, the Court is of the opinion that an injunction of the scope requested by the petitioner is not warranted by either the allegations or the proof in this case. The order to be signed by the Court will, therefore, be limited to future activities of the respondents in connection with the performance of Cianchette's sub-contract with Davison for work at the Dow Housing Project. In this respect, the Court calls to counsel's attention the case of Schauffler v. United Association of Journeymen & Apprentices of Plumbing Industry, AFL, 3 Cir., 1955, 218 F.2d 476, in which Chief Judge Biggs sets forth the consideration which this Court regards as appropriate in determining the scope of the order to be issued by a Court in a Section 10(*l*) proceeding.

Secondly, the form of order presented by petitioner included an affirmative direction requiring respondents to notify their members that respondents were no longer instructing them to picket or engage in other strike activity against Davison or the sub-contractors involved for the purpose of requiring them to cease doing business with Cianchette. The Court feels that such affirmative relief is neither just and proper nor appropriate in this case inasmuch as respondents have voluntarily ceased both picketing and strike activity and such activity has in fact ceased pending the ruling of this Court. The Court further questions the appropriateness of the requirement of such a notice in a Section 10(*l*) proceeding prior to a final determination by the National Labor Relations Board of the basic issues involved. In this connection, the Court calls to counsel's attention the case of Schauffler v. Highway Truck Drivers & Helpers, Local 107, 3 Cir., 1956, 230 F.2d 7, 13, in which Judge Goodrich comments upon an analogous provision for notice in a Section 10(*l*) order.

Thirdly, subsequent to the conclusion of the hearing, counsel for the respondents provided the Court with written assurances that the respondents will not resume the activities which are the subject of the petition in this matter, and

specifically, that the respondents will not resume such activities at any time hereafter while the Dow Housing Project is in progress. Counsel for the respondents assert that because of the cessation of the picketing and other strike activities during the pendency of these proceedings, accompanied by counsel's assurances that the activities will not be resumed, there is no likelihood that such action and conduct will be repeated or continued, and an injunction is unnecessary. Counsel for the petitioner and for the complainant Cianchette vigorously opposed respondents' request, taking the position that the controversy is not moot and that upon the record the petitioner is entitled to an order of this Court with the sanctions which follow therefrom.

The Court, of course, accepts the assurances of respondents' counsel as to the voluntary compliance by respondents with the ruling of this Court. With such assurances, the Court is reluctant to sign the order otherwise indicated by the record made before it at the hearing. Congress, however, has provided in the National Labor Relations Act the framework of procedures for the determination and enforcement of the policies stated in the Act, and this Court has concluded that the orderly administration of that Act requires the issuance of the order provided by Section 10($l$) upon the basis of the findings which the Court has made. In arriving at this conclusion, the Court has been mindful of the fact that there are sanctions provided in the event of violation by the respondents of a court order which would not be present in the event of their failure to comply with the voluntary assurances of counsel. The Court also notes that since there has been no final adjustment of the matters in dispute between the respondents and the complaining parties, the case cannot be considered as moot. In this connection the Court calls to counsel's attention the cases of Douds v. International Longshoremen's Ass'n, 2 Cir., 1957, 242 F.2d 808, at pages 812, et seq.; Shore v. Building & Construction Trades Council, 3 Cir., 1949, 173 F.2d 678, at pages 682, et seq.; and Le Baron v. Los Angeles Building & Construction Trades Council, D.C.S.D. Cal.1949, 84 F.Supp. 629.

The Court will, therefore, sign an order in the form which, as revised, has been presented to it.

## Findings of Fact and Conclusions of Law

This cause came on to be heard upon the verified petition of Robert E. Greene, Acting Regional Director of the First Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10($l$) of the National Labor Relations Act, as amended (herein called the Act), pending final disposition of the matters involved pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondents filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on August 15 and 18, 1958. All parties were afforded full opportunity to be heard and to examine and cross examine witnesses, to present evidence bearing on the issues and to argue and submit briefs on the evidence and the law. The Court has fully considered the petition, answer, evidence and arguments and briefs of counsel. Upon the entire record, the Court makes the following:

## Findings of Fact

1. Petitioner is Acting Regional Director of the First Region of the Board, an agency of the United States, and filed this petition for and on behalf of the Board.

2. Respondents Bangor Building Trades Council, AFL-CIO; Hoisting and Portable Operating Engineers, Local 4, International Union of Operating Engineers, AFL-CIO; Local 1377, International Hod Carriers', Building & Common Laborers' Union of America, AFL-CIO (herein called Council, Local 4, and Laborers, respectively), unincorporated associations, are labor organizations within the meaning of Sections 2(5), 8

(b) and 10(*l*) of the Act, and at all times material herein have been engaged within this judicial district in transacting business and in promoting and protecting the interests of their employee members, and the members of affiliated labor organizations.

3. On or about August 1 and August 5, 1958, J. R. Cianchette (herein called Cianchette), pursuant to the provisions of the Act, filed charges with the Board alleging that respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b), subsection (4) (A) of the Act.

4. On or about August 6, 1958, Davison Construction Company, Inc. (herein called Davison), pursuant to the provisions of the Act, filed charges with the Board alleging that respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b), subsection (4) (A) of the Act.

5. Said charges were referred to petitioner as Acting Regional Director of the First Region of the Board for investigation and were investigated by petitioner and under his supervision.

6. There is, and petitioner has, reasonable cause to believe that:

(a) Cianchette, with principal office and place of business in Pittsfield, Maine, is engaged in the work of heavy and highway construction, including excavating, grading and paving, and construction of utilities, as a subcontractor and as a general contractor. During the year 1957, his national defense contracts had a value in excess of $7,000,000.

(b) Cianchette has no collective bargaining contract with any one of respondents, or any other labor organizations, with respect to his employees. Nor is any one of respondents or any other labor organization the collective bargaining representative of his employees.

(c) Davison, with principal office and place of business in Manchester, New Hampshire, is a general contractor engaged in industrial, commercial and housing development construction in the States of New Hampshire, Maine and other States of the United States. During the year 1957, its national defense projects had a value in excess of $10,000,000., and its sales of services and supplies and equipment outside the State of New Hampshire were in excess of $8,000,000.

(d) Davison's employees are represented by labor organizations for collective bargaining purposes, and Davison has collective bargaining contracts with such labor organizations with respect to wages, hours of work, and other terms and conditions of employment of its employees. Respondent Local 4 has a collective bargaining contract with Davison. Respondents Council and Laborers do not have collective bargaining contracts with Davison.

(e) Davison is the general contractor for the construction of a defense housing project at or near Dow Air Force Base, Bangor, Maine, for the United States Air Force, with an approximate value of $8,000,000. to house United States Air Force personnel stationed at Dow Air Force Base. Cianchette has the subcontract from Davison, valued at approximately $1,000,000., for the excavation and grading work and the construction of facilities for utilities, at this defense housing project. This defense housing project (herein called Dow Housing Project) has been under construction since on or about July 1, 1958.

(f) From on or about July 31, 1958, to August 8, 1958, respondents picketed the Dow Housing Project with signs bearing legends that Davison is unfair. In addition, during this period, respondents instructed, ordered, directed and appealed to Davison's employees not to work at the Dow Housing Project. On August 9, 1958, respondents voluntarily agreed to suspend the picketing, and orders, directions, instructions and appeals until this Court rendered a decision in the matter, and did suspend such conduct.

(g) An object of respondents' picketing, and other acts of inducement and encouragement of employees of Davison, has been to force or require Davi-

son to cease doing business with Cianchette.

(h) As a result of respondents' picketing and orders, directions, instructions and appeals, employees of Davison and subcontractors King Cole Heating Company, Dole Electric Co., Mangano & Sons, and Scanlon Company (herein called King, Dole, Mangano, and Scanlon) refused during the period from July 31 to August 8, 1958, to work for them at the Dow Housing Project, and have thereby brought to a standstill the construction of this vital national defense project. These employees resumed work at the Dow Housing Project on August 11, 1958, pursuant to respondents' voluntary agreement of August 9, 1958, as stated in finding of fact 6(f) above.

(i) By the acts and conduct described in findings of fact 6(f), 6(g) and 6(h) above, respondents have engaged in, and have induced and encouraged employees of Davison, King, Dole, Mangano, and Scanlon, to engage in, strikes or concerted refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle work on goods, articles, materials or commodities, or to perform services.

(j) An object of respondents' conduct set forth in findings of fact 6(f), 6(g), 6(h) and 6(i) above, has been to force or require Davison and other employers and persons to cease doing business with Cianchette.

7. The acts and conduct of respondents set forth in findings of fact 6(f), 6(g), 6(h), 6(i) and 6(j) above, occurring in connection with the operations of Davison and Cianchette, have a close, intimate and substantial relation to trade, traffic and commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

8. It may be fairly anticipated that unless enjoined, respondents will continue and repeat their acts and conduct set forth in findings of fact 6(f), 6(g),

6(h), 6(i) and 6(j) above, or similar or like acts and conduct.

### Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter of this proceeding and is empowered to grant injunctive relief under Section 10(l) of the Act.

2. Respondents are labor organizations within the meaning of Sections 2(5), 8(b) and 10(l) of the Act.

3. There is and petitioner has reasonable cause to believe that:

(a) Davison and Cianchette are engaged in commerce within the meaning of Section 2, subsections (6) and (7) of the Act.

(b) Respondents have engaged in unfair labor practices within the meaning of Section 8(b), subsection (4) (A) of the Act, affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act, and a continuation of such practices will impair the policies of the Act as set forth in Section 1(b) thereof.

4. To preserve the issues for the determination of the Board as provided in the Act, it is appropriate, just and proper, that pending final disposition of these matters pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuance or repetition of the acts and conduct set forth in the findings of fact 6(f), 6(g), 6(h), 6(i) and 6(j) above, or like or related acts or conduct in connection with the performance of J. R. Cianchette's subcontract with Davison Construction Co., Inc. for work at the Dow Housing Project.

### Order Granting Temporary Injunction

This cause came on to be heard upon the verified petition of Robert E. Greene, Acting Regional Director of the First Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to

Section 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), pending the final disposition of the matters involved pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed for in said petition. The Court has considered the pleadings, evidence, briefs, arguments of counsel and the entire record in this case and has made and filed its Findings of Fact and Conclusions of Law; and it appearing to the satisfaction of the Court that there is reasonable cause to believe that respondents have engaged in acts and conduct in violation of Section 8(b), subsection (4) (A) of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and that such acts and conduct will likely be repeated or continued unless enjoined;

Now therefore, upon the entire record, it is

Ordered, Adjudged and Decreed that, pending the final disposition of the matters involved pending before the National Labor Relations Board, respondents Bangor Building Trades Council, AFL-CIO; Hoisting and Portable Operating Engineers, Local 4, International Union of Operating Engineers, AFL-CIO; Local 1377, International Hod Carriers', Building & Common Laborers' Union of America, AFL-CIO, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be, and they hereby are, enjoined and restrained from:

Engaging in, or by any means, including picketing, orders, instructions, directions, requests, appeals, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, inducing or encouraging the employees of Davison Construction Company, Inc., King Cole Heating Company, Dole Electric Company, Mangano & Sons, or Scanlon Company, to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is to force or require Davison Construction Company, Inc. to cease using, handling, transporting or otherwise dealing in the products of J. R. Cianchette, or to cease doing business with J. R. Cianchette, in connection with the performance of his subcontract with Davison Construction Company, Inc. for work at the Dow Housing Project.