**SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiff-Appellant,**

v.

**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, and its Local 6222, Defendants-Appellees.**

No. 71–1606.

United States Court of Appeals, Fifth Circuit.

Nov. 22, 1971.

As Modified on Denial of Rehearing and Rehearing En Banc Feb. 1, 1972.

———◆———

James M. Shatto, Joseph R. Riley, Leroy Jeffers, J. M. Hopper, Charles L. Berry, Houston, Tex., for appellant Southwestern Bell Telephone Co.; Vinson, Elkins, Searls & Smith, Houston, Tex., of counsel.

William N. Wheat, Houston, Tex., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge and INGRAHAM and RONEY, Circuit Judes.

INGRAHAM, Circuit Judge:

This is an interlocutory appeal from a denial of an injunction. Appellant Southwestern Bell Telephone Company (the company) has brought suit against the Communications Workers of America and its Local 6222 (the union) under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, for breach of the collective bargaining agreement and to enjoin the union's striking of one of the company's construction sites. The dispute centers over the proposed staff structure for the strikebound Houston directory assistance center project. The company had proposed to allow two part-time employees working back to back to operate a full shift which had been work available to full-time employees based on their seniority. Moreover, the company proposed a separate seniority schedule for these part-time employees.

Responding to the staff plan, the union filed an unfair labor practice complaint with the National Labor Relations Board, grievances under the contract grievance procedure, and additionally struck the site of the facility, halting completion of the project.

 Since the time this case was submitted on appeal, the collective agreement in effect at the origin of the dispute has been superseded by a new agreement which substantially carries forward the terms of its predecessor. The union asserts that this appeal is now moot as a consequence of the new agreement and its removal of pickets at

the Houston project for a brief period. We disagree. The test of mootness in a case asking for injunctive relief is whether the injury is continuing or is likely to be repeated. Douds v. International Longshoremen's Association, 242 F.2d 808 (2nd Cir., 1957); Green v. Bangor Building Trades Council, AFL-CIO, 165 F.Supp. 902 (D.Me., 1958). The dispute at issue in this case has not been resolved, nor have the pickets left the site. It is a live controversy and an appropriate case for our continued appellate consideration, cf. *Douds, supra.* Whether the union has excluded this dispute from the coverage of the no-strike and arbitration clauses in the past and whether the union may subsequently exclude the dispute from the ambit of those clauses are two distinct questions. We are presented with a record of only the first. In considering whether an issue has been removed from the coverage of such clauses, this court has previously held that exclusion from coverage must be specifically articulated. The district court concluded that the disputes here in question were not covered by the contract's arbitration and no-strike clauses. However, for reasons stated infra, we disagree with the method in which the court reached that determination.

Turning to the merits of the company's appeal, the district court denied its application for an injunction on the grounds that the proposed staff structure was a prospective modification or amendment to the agreement beyond the scope of the contract arbitration clause and was unwarranted on basic equitable considerations.[1]

---

1. The relevant provisions of the contract are as follows:

### ARTICLE II

### SERVICE INTERRUPTION

The Company and the Union recognize their responsibility in the interests of the public and the employees to avoid interruptions in telephone service. Accordingly, they will process promptly employee complaints and grievances which are subject to handling under the grievance procedures for the purpose of avoiding interruption of telephone service to the public and economic loss to employees from work stoppages.

Any employee complaint or grievance which is subject to handling under the grievance procedure shall be presented and heard promptly in accordance with the provisions of those procedures and the arbitration procedures, where applicable.

As to those employee grievances which are subject to arbitration, the Union, its officers, or representatives will not order or sanction a work stoppage or slowdown at any time.

In Boys Market, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 237, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court held that a district court may, when equity requires, enjoin a strike to effectuate a no-strike arbitra-

As to those employee complaints and grievances which are not subject to arbitration, the Union, its officers, or representatives will not order or sanction a work stoppage or slowdown while the matter is being processed through the Grievance procedures.

## ARTICLE V
## ARBITRATION

Section 1. If, during the term of this Agreement, with respect to any of the following existing and designated Departmental Agreements between the Union and the Company, to wit:

| | |
|---|---|
| 1968 Accounting Agreement | Effective as of 7–17–68 |
| 1968 Commercial-Marketing Agreement | Effective as of 7–17–68 |
| 1968 Commercial-Marketing Agreement for Directory Representatives | Effective as of 7–17–68 |
| 1968 Plant Agreement | Effective as of 7–17–68 |
| 1968 Traffic Agreement | Effective as of 7–17–68 |

and subsequent agreements which by specific reference therein are made subject to this Article, a difference shall occur, between the Union and the Management, and continue after all steps in the "Formal Grievance" procedure established in any such applicable Departmental Agreement shall have been undertaken and completed, regarding,

a) the true intent and meaning of any specific provision or provisions thereof (except as such provision or provisions relate, either specifically or by effect, to prospective modifications or amendments of such agreements), or

b) the application of any provision or provisions thereof to any employee or group of employees, and grievances arising from such application, or

c) the dismissal of any employee with more than three completed years' net credited service then in any such event, either the Union or the Management may submit the issue of any such matter to arbitration for final decision in accordance with the procedure hereinafter set forth.

Section 2. In the event that either party hereto, within 60 days after completion of the Formal Grievance procedure aforesaid, elects to submit a matter described in the preceding section to arbitration the parties agree that the matter shall be so submitted, and agree that such submission shall be to one arbitrator. The parties shall endeavor in each instance within a three weeks' period to agree upon the arbitrator, but if unable to so agree, the arbitrator shall be designated by the American Arbitration Association upon the written request of either party. In either such event, the arbitration shall be conducted under the then obtaining rules of the Voluntary Labor Arbitration Tribunal of the American Arbitration Association. Each party shall pay for the time consumed by and the expenses of its representatives, and shall be equally responsible for the fees of the American Arbitration Association, the compensation, if any, of the arbitrator, and any such other general administrative expense that may occur.

After an election to arbitrate, if within 90 days following completion of the Formal Grievance procedure no arbitrator has been agreed upon and no written request has been made upon the American Arbitration Association to designate an arbitrator, then no such matter shall continue to be arbitrable.

Section 3. The arbitrator shall be confined to the subjects submitted for decision, and may in no event, as a part of any such decision, impose upon either party any obligation to arbitrate on any subjects which have not herein been agreed upon as subjects for arbitration; nor may he, as a part of any such decision, effect reformation of any such contracts, or of any of the provisions thereof.

Section 4. The decision of any arbitrator, selected in accordance with Section 2 hereof, shall be final and the parties agree to be bound and to abide by such decision.

Section 5. If and when notice of termination of this Agreement be given as provided in the Duration article hereof, any existing dispute described in Section 1 hereof as an appropriate subject for arbitration which is in the process of Formal Grievance negotiation of record prior to the service of such notice of termination, or, if such an existing dispute appropriate under Section 1 hereof shall become a matter of record in the process of Formal Grievance negotiation in the manner and within the time limit prescribed for filing Formal Grievances, then in either such event any such matter may be carried to a conclusion under this Article without regard to the termination of this Agreement.

tion clause to which the parties have voluntarily agreed. The Court stated:

> "Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in *Sinclair* suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief—principles that we now adopt:
>
>> " 'A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.' 370 U.S., at 228, [82 S.Ct., at 1346.] (Emphasis in original.)"

*Boys Market* presented the Supreme Court with a case in which there was no dispute that the grievance in question was subject to arbitration under the contract. In the present case, however, there is a dispute. In such a case it is the district court's duty to first examine the collective agreement and inquire whether the parties have agreed to arbitration and whether the parties have agreed to arbitrate the specific issue. International Association of Heat & Frost Insulation & Asbestos Workers v. Leona Lee Corporation, 434 F.2d 192 (5th Cir., 1970). The trial judge to whom an application for injunction is made has no authority to decide the substance of the question for arbitration. Rather he must only decide whether or not the parties have bound themselves to arbitrate that subject matter. Lodge No. 12, Etc. v. Cameron Iron Works, Inc., 292 F.2d 112 (5th Cir., 1961); Communications Workers of America v. Southwestern Bell Telephone Co., 415 F.2d 35, 38 (5th Cir., 1969). Since *Lincoln Mills*[2] it has become increasingly clear that arbitration is the central institution for the administration of the collective bargaining contract. In order to effectuate this policy, it is necessary that a uniform standard of arbitrability be applied, regardless of whether the suit asks for the injunction of a strike, *Boys Market*, or the specific performance of an arbitration clause. Communications Workers of America v. Southwestern Bell, *supra*. That test is the same as was stated in Cameron, *supra*, and in Southwestern Bell, *supra*, and has been called one of "arguable arbitrability." Our examination is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract and which is "arguably arbitrable." See also Oil, Chemical & Atomic Workers International Union v. Southern Union Gas Co., 379 F.2d 774 (5th Cir., 1967); Local No. 787 v. Collins Radio Co., 317 F.2d 214 (5th Cir., 1963). Applying this

---

**2.** Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

standard of "arguable arbitrability" to the contract at issue, it is plain that the union's position and the district court finding that the dispute was not within the scope of the contract's arbitration clause (because it was a prospective modification of the contract) cannot stand. Whether or not the company's proposal is a prospective modification of the contract, the use of part-time employees with their own seniority schedule requires consideration of the application of the collective agreement's seniority clause.[3] As such, it is a claim which on its face is governed by the contract and is arguably arbitrable. United Steel Workers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960). As the National Labor Relations Board recognized in its recent opinion abstaining from asserting unfair labor practice jurisdiction over an arbitrable claim: "Arbitration has become the central institution in the administration of collective bargaining contracts." Collyer Insulated Wire, 192 NLRB, No. 150 (1971). Where a public utility is concerned, the public policy of favoring arbitration to resolve industrial strife is even stronger. If, but only if, the other elements of *Boys Market* are met,[4] these considerations require that an injunction and arbitration order be entered in this case.

Since this is an interlocutory appeal and the district court retained on its docket that portion of the company's complaint asking for monetary damages, we remand the case for further consideration in light of the concept of arbitrability discussed. The order of the district court is vacated and remanded for further proceedings not inconsistent herewith.

---

3. Article XIX, 1968 Traffic Agreement.

4. "Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance." 398 U.S. at 253–54, 90 S.Ct. at 1594, 26 L.Ed.2d 199.

 The district court properly applied the procedure approved by the Supreme

On Petition for Rehearing and Petition for Rehearing En Banc.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing en Banc is denied.

Court in *Boys Market*, however, in finding that an injunction was inappropriate it misapplied the legal principles of arbitrability discussed supra. Its findings are therefore not accorded the protection of the clearly erroneous rule. F.R. C.P. 52(a). Stark v. Shell Oil Co., 450 F.2d 994 (5th Cir.) [1971.]