**BETHLEHEM MINES CORPORATION,
Plaintiff,**

v.

**UNITED MINE WORKERS OF AMER-
ICA et al., Defendants.**

**Civ. A. No. 71–1109.**

United States District Court,
W. D. Pennsylvania.

March 24, 1972.

---

2. See also Travelers Indemnity Co. v. Standard Accident Insurance Company (C.A.7) 329 F.
2d 329, 331.

Donald B. Heard and Kathleen A. Merry, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Lloyd F. Engle Jr., and Melvin P. Stein, Kuhn, Engle & Blair, Pittsburgh, Pa., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

WEBER, District Judge.

From the testimony produced at the hearing, upon notice to the defendants, for a temporary restraining order on November 24, 1971, and the further testimony produced on the hearing for motion for preliminary injunction on December 15, 1971, the court makes the following findings:

### FINDINGS OF FACT

1. Plaintiff is a West Virginia corporation licensed to do business in Pennsylvania, and is an employer engaged in commerce within the meaning of the National Labor Relations Act, as amended, 29 U.S.C. § 152(2) and (7).

2. Defendant Unions are labor organizations representing employees in an industry affecting commerce within the meaning of the National Labor Relations Act, as amended.

3. Defendant Local Union No. 1386 of the United Mine Workers of America, District #2, is a local union represent-

ing the employees of plaintiff at plaintiff's Mine No. 31.

4. Defendant Local Union No. 850 of the United Mine Workers of America, District #2, is a local union representing the employees of plaintiff at plaintiff's Mine No. 32. Although named originally as a defendant, the evidence did not establish liability on the part of Local 850 for failure to return to work.

5. Defendant Local Union No. 1368 of the United Mine Workers of America, District #2, is a local union representing the employees of plaintiff at plaintiff's Mine No. 33.

6. Defendant Local Union No. 6359 of the United Mine Workers of America, District #2, is a local union representing the employees of plaintiff at plaintiff's Mine No. 38.

7. Defendant Local Union No. 6394 of the United Mine Workers of America, District #2, is a local union representing the employees of plaintiff at plaintiff's Mine No. 73.

8. Defendant Local Union No. 6411 of the United Mine Workers of America, District #2, is a local union representing the employees of plaintiff at plaintiff's Mine No. 77.

9. Plaintiff and defendants are parties to a labor contract entitled the "National Bituminous Coal Wage Agreement of 1971", which continues in full force and effect through November 12, 1974, unless extended by the parties, and which was and is in full force and effect at all times here concerned.

10. Said labor agreement contains a mandatory grievance procedure culminating in compulsory arbitration.

11. Said labor agreement contains an agreement not to strike implied from its provision for settlement of all disputes under the machinery provided in the contract.

12. The individual defendants are officers and agents of the defendant Local Unions.

13. On or about October 1, 1971, defendants and their members employed at plaintiff's Cambria Division, consisting of Mine Nos. 31, 32, 33, 38, 73, and 77, and two Preparation Plants, went on strike when the "National Bituminous Coal Wage Agreement of 1968" expired. Bargaining between the United Mine Workers of America and the mine operators continued until a new wage agreement, the "National Bituminous Coal Wage Agreement of 1971", was signed effective November 12, 1971.

14. Notwithstanding ratification of the 1971 Agreement by the duly authorized representatives of the defendant United Mine Workers of America, defendants and their members employed at plaintiff's Cambria Division failed and refused to report for work as scheduled at 12:01 o'clock, A.M. on November 15, 1971, and since that time work was available, and they continued to refuse to report for work as scheduled, thereby preventing plaintiff from resuming mining operations until November 25, 1971, except for defendant Local #850 at Mine 32 which voted to return to work but was ordered by plaintiff not to work because facilities were not available.

15. The 1971 Agreement required that work resume after November 12, 1971, and also provides an Addendum as follows:

"The increase in wages and benefits provided herein shall become effective on the earliest possible date after the necessary clearances required under the Economic Stabilization Program of the Federal Government under Executive Order 11625 are obtained in form satisfactory to the parties."

On Friday, November 19, 1971, the necessary clearances required, concerning the so-called economic provisions, under the Economic Stabilization Act were granted for the first year of the 1971 Agreement, retroactive to November 14, 1971 (the day the "Freeze" ended and "Phase 2" began).

16. By Monday, November 22, 1971, miners across the country had returned to work as directed by President Boyle. The defendants above identified refused

to halt their work stoppage, setting forth disagreement with the provisions of the new contract, relating to staggered starting and quitting times and the absence of a provision declaring Saturday work optional.

17. Disagreements as to staggered starting and quitting times and optional Saturday work had been the cause of prior work stoppage between these parties under the 1968 contract and had been the subject of prior injunctive proceedings in this court resulting in injunction against work stoppage and orders to arbitrate.

18. No attempt had been made to implement the grievance procedure provided in the 1971 contract prior to this work stoppage.

19. The prior arbitration on this matter of dispute had not been finally determined by arbitration at the time of the work stoppage involved in this proceeding.

20. Suit was entered in the Federal Court of the Western District of Pennsylvania by plaintiff on November 24, 1971.

21. Upon notice to defendants and their counsel, a hearing was held, testimony was taken, and a Temporary Restraining Order was entered by the court on November 24, 1972, to continue in effect until a further hearing on plaintiff's motion for preliminary injunction.

22. Following the issuance of the Temporary Restraining Order, the local union members returned to work.

23. A hearing on the motion for preliminary injunction was held on December 15, 1972 at which all testimony was concluded, and the Temporary Restraining Order was continued in effect as a Preliminary Injunction until further order of this court.

24. This work stoppage was the forty-sixth (46th) strike at plaintiff's Cambria Division since the 1968 collective bargaining agreement became effective, all of which constituted attempts to settle grievances without resort to the contractual grievance procedures.

25. As a result of such work stoppages and forced shutdowns, plaintiff has lost in excess of 1,032,390 tons of coal.

26. It is impossible for plaintiff to make up for lost tonnage, as it is working at full capacity—three shifts, six days per week—as permitted by contract and maintenance considerations.

27. Defendant International has refused to apply any sanctions contained in its Constitution against defendant Locals or any of its members employed by plaintiff at its Cambria Division to enforce its directive of September 23, 1966 prohibiting such illegal work stoppages.

28. Defendant Locals and the individual defendant officers thereof have refused to apply any sanctions against those of its members participating in such illegal work stoppages, and have themselves participated.

29. Defendant Locals and the individual defendant officers thereof have applied sanctions in the form of monetary fines against those members who have refused to participate in such illegal work stoppages, and who have reported for work.

30. The history of events at the Cambria Division indicates a great likelihood of additional work stoppages.

31. Each day of work stoppage causes plaintiff to lose 13,000 tons of coal valued at $191,915 as well as ongoing overhead costs in excess of $700,000 per month, and causes irreparable harm at the steel plants of the Bethlehem Steel Corporation, which has no other adequate source of supply of coal and in particular "low vol" coal, other than that produced at its Cambria Division and related facilities. In addition, the inability to process coal normally received from the nearby Barnes & Tucker Mines results in an additional loss of over 3,000 tons of coal per day valued at $43,950.

32. It would be impossible for defendants jointly or severally to compen-

sate plaintiff for the damage resulting from such illegal work stoppages.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding under the Labor Management Relations Act of 1947, 61 Stat. 136, § 301; 29 U.S.C. § 185.

2. Plaintiff is an employer and is engaged in commerce or industry affecting commerce within the meaning of the Act.

3. Defendants International, District #2, and Local Nos. 1386, 1368, 6359, 6394, and 6411, are labor organizations within the meaning of the Act.

4. Defendants International, District #2, and Local Nos. 1386, 1368, 6359, 6394, and 6411, are the collective bargaining representative of plaintiff's hourly-paid production and maintenance workers.

■ 5. The Norris-LaGuardia Act has no application to this case because of the existence of a local dispute subject to arbitration.

6. Industrial peace requires a prompt resolution of disputes.

7. The November 22, 1971 strike at plaintiff's Cambria Division was a local dispute or difference of the kind which all parties were contractually obligated to resolve under the terms of the National Bituminous Coal Wage Agreement of 1971, and, in particular, the section denominated Article XVII, "Settlement of Disputes" (1971).

■ 8. The contract precludes strikes under Article XX, Maintain Integrity of Agreement. Accordingly, the defendant Unions' resort to strikes and work stoppages was, and is, in violation of contract, cf. Lewis v. Benedict Coal Corporation, 259 F.2d 346 [6th Cir., 1958], as aff'd as to this issue, 361 U.S. 459, 464, 80 S.Ct. 489, 4 L.Ed.2d 442; Local 174 et al. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 [1962]; Boys Markets, Inc. v. Retail Clerks Union of Local 770, 398 U.S. 235,

90 S.Ct. 1583, 26 L.Ed.2d 199 [1970]; Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 [1957]; Blue Diamond Coal Co. v. UMW, 436 F.2d 551 [6th Cir., 1970].

9. All strikes which have occurred at plaintiff's Cambria Division during the course of the current and preceding collective bargaining agreements arose out of local disputes or differences of the kind which the parties were contractually obliged to settle under the grievance machinery provided in the National Bituminous Coal Wage Agreements of 1968, and 1971.

■ 10. Because this strike and strikes and work stoppages of this character cause immediate and irreparable harm and injury, loss and damage to the plaintiff, and for the additional reason that the Court believes that breaches of the contract by the Unions will continue unless an injunction is issued, the Court is of the opinion that an injunction is appropriate in the premises, despite the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 104, cf. The Boys Markets, Inc. v. Retail Clerks Union of Local 770, 398 U.S. 235, 90 S. Ct. 1583, 26 L.Ed.2d 199 [1970]; Mitchell v. Speller, 24 CCH Labor Cases ¶ 67,-916 [N.D.Fla.1953]; Schauffler v. United Association of Journeymen, 214 F.2d 476 [3rd Cir., 1955]; Schauffler v. Highway Truck Drivers and Helpers, Local 107, 230 F.2d 7 [3rd Cir., 1956]; Sperry v. Building Material and Construction, etc., 149 F.Supp. 243 [D.C. Neb.1956]; Greene v. Bangor Building Trades Council, 165 F.Supp. 902 [N.D. Maine 1958]; Old Ben Coal Corp. v. Local Union No. 1487 of the United Mine Workers of America, Cv. No. 70–155–D [E.D.Ill. Jan. 14, 1971].

■ 11. Since defendants are unwilling to voluntarily implement internal methods of preventing work stoppages, federal labor policy favoring labor peace requires the issuance of a permanent injunction to guarantee their compliance with the provisions of the collective bargaining agreement.

12. The defendant Unions and their officers are responsible for the mass action of their members. New Power Wire and Electric Co. v. NLRB, 340 F.2d 71 [2nd Cir., 1965]; Teamsters v. Hum Ko Co., 42 LC ¶ 16,780 [6th Cir., 1961]; United Textile Workers v. Newberry Mills, 238 F.Supp. 366 [W.D.S.C.1965]; U. S. v. Brotherhood of Railroad Trainmen, 96 F.Supp. 428 [E.D., Ill.1951]; United States v. International Union, UMW, 77 F.Supp. 563 [D.C.1948], cert. den. 85 U.S.App.D.C. 149, 177 F.2d 29.

13. Plaintiff has suffered irreparable harm and injury and will continue to suffer irreparable harm and injury as a result of the violation of the 1971 Labor Agreement by the defendant Unions and their members. An award of damages cannot possibly compensate plaintiff for the loss of coal production resulting from these work stoppages or strikes.

14. Plaintiff has no adequate remedy at law for the refusal of the defendant Unions and their members to utilize the procedures to which the parties agreed for settling differences or disputes.

15. Greater injury will be suffered by the plaintiff from the denial of a Preliminary Injunction than will be suffered by the defendant Unions and their members from its issuance.

16. From the evidence as presented, there is reasonable likelihood that the plaintiff will succeed at the final hearing on the merits of the case.

## DISCUSSION

Defendants principal argument has been that this work stoppage did not arise out of a matter which was subject to the grievance procedure. The evidence leads me to a contrary conclusion. At pages 50, 51, 52, and 53 of the transcript of testimony at the hearing of November 24, 1971, Owen F. Slagle, Sr., President of District No. 2, UMWA, which includes all the defendant local unions explained at length that the prime objection of the members was the provision as to starting time, which was a dispute still pending unresolved by the arbitrator to whom a prior grievance on this subject had been submitted after this court had enjoined a prior work stoppage. The terms of the 1971 contract affirmed the employer's position on this prior dispute. Mr. Slagle was of the opinion that the provisions of the 1971 contract on this subject were "quite ambiguous".

"I could interpret it one way, and I think the company could the other. Because starting time is in the realm of being ambiguous, and there has been a squabble over there, as I think you know." (Tr. pp. 50, 51—11/24/71).

and again:

"Now, the starting time is still, in my judgment, ambiguous in the contract. I think I can read into it something, and I think the operator can too; and I think we are going to have grievances on it. I don't think there is any doubt about that." (Tr. p. 52 idem).

There is no other explanation in the entire record for the actions of the defendants' members. While it is arguable that their dissatisfaction was directed against their bargaining agent for adopting as a provision of the agreement their employer's contention as to starting times, they are bound by that agreement. Their strike, their concerted action, and their threat of compulsion was directed at their employer, as it had been in the prior work stoppage on the same issue, to force the employer to retreat from a position it had taken in the collective bargaining process concluded by the 1971 agreement. The strike was an obvious manifestation of an intention not to be bound either by the terms of the collective bargaining agreement or the pending arbitration on the same issue.

## ORDER OF COURT

And now, to wit, this 24th day of March, 1972, on the basis of the foregoing Findings of Fact and Conclusions of

Law, it is hereby ordered, adjudged and decreed that:

1. The Temporary Restraining Order issued by this court after notice and hearing on November 24, 1971, and continued in effect after hearing on continuance as a Preliminary Injunction on December 15, 1971, be, and hereby is, extended as a Preliminary Injunction until final disposition of this case; and

2. That such Order shall be binding upon all of the defendants, including the United Mine Workers of America; District No. 2, United Mine Workers of America; the various local unions of the United Mine Workers of America; their officers and members named as Defendants therein, except for Local 850, UMWA.

3. The Motion of Defendants to Dismiss is denied.