183 Conn. 235 (1981)
CONNECTICUT EMPLOYEES UNION "INDEPENDENT," INC.
v.
CONNECTICUT STATE EMPLOYEES ASSOCIATION, INC., ET AL.
Supreme Court of Connecticut.
Argued December 10, 1980.
Decision released March 3, 1981.
BOGDANSKI, PETERS, HEALEY, ARMENTANO, and WRIGHT, JS.
*236 Dennis G. Ciccarillo, with whom, on the brief, was Edward T. Lynch, for the appellant-appellee (plaintiff).
Donald C. Pogue, for the appellees-appellants (defendants).
ARTHUR H. HEALEY, J.
The appeal and cross appeal in this case are generated by disputes between two unions arising out of the claimed breach of a written coalition agreement between them. The two unions involved are the Connecticut Employees Union "Independent," Inc. (CEUI) and the Connecticut State Employees Association, Inc. (CSEA). After a trial, the court below granted injunctive relief and awarded money damages to the plaintiff CEUI. Thereafter, CEUI appealed to this court contesting the extent of the injunctive relief granted and the court's resolution of certain legal questions in construing the coalition agreement. The defendant CSEA cross appealed challenging the issuance of the injunctive relief and the award of damages.

I
The background circumstances are not simple and must be set out in some detail. The plaintiff CEUI and the defendant CSEA are each employee organizations representing the interests of their members in employer-employee relations. At the time of trial, the membership of both unions consisted of state employees.[1] In 1975, the General *237 Assembly enacted Public Acts 1975, No. 75-566, which for the first time accorded collective bargaining rights to state employees. See General Statutes §§ 5-270 through 5-280. Pursuant to this legislation, the Connecticut state board of labor relations (the board) designated the following five groups as units of state employees: (1) SE 3450: the Maintenance and Service Unit; (2) SE 3261: the Clerical Unit; (3) SE 3349: the Health Care Non-Professional Unit; (4) SE 3345: the Social and Human Services Unit; and (5) SE 3349: the Health Care Professional Unit. In order to determine who would be the bargaining agents for each of these units, an election was required. Both CEUI and CSEA, along with other unions, sought to become the bargaining agents for these units.
For whatever their reasons, CEUI and CSEA decided to seek certification from the board as joint bargaining agents for all five units. To that end and after much negotiation, CEUI and CSEA executed on December 30, 1976, a written coalition agreement.[2]
After the elections were held, the board certified CEUI and CSEA as the exclusive joint bargaining agents for the five units. The coalition of CEUI and CSEA began its duties and negotiated contracts between the employer state of Connecticut and the employee groups. These contracts were to run for a period of two years, starting on July 1, 1977, and expiring on June 30, 1979. The coalition agreement between the two unions provided that either party could terminate it at the time of termination of the *238 collective bargaining agreements, provided certain prior notice was given.[3] The coalition agreement specifically provided that: "Each party to this agreement shall maintain its autonomy and independence, subject only to the terms of this agreement."[4]
Under the legislation authorizing collective bargaining for state employees, any agreement reached by the negotiators was required to be submitted to the General Assembly for its implementation and approval. General Statutes § 5-278 (b). After the execution of the coalition agreement between CEUI and CSEA in 1976, the 1977 General Assembly adopted House Joint Resolution No. 154. This resolution, in effect, required the submission to the General *239 Assembly of new collective bargaining agreements (taking effect July 1, 1979) by March 15, 1979.[5]
In response to this resolution, the board adopted a regulation that any interested organization desiring to be designated as the exclusive bargaining agent should file a notification with the board between July 1 and August 31 of the year prior to the expiration of the collective bargaining contract involved. Under such deadlines, if either CEUI or CSEA intended to go it alone after the expiration of the collective bargaining contract on June 30, 1979, it had to file such a notification with the board by August 31, 1978. Otherwise, it could not be considered an applicant for designation as exclusive bargaining agent unless the board "for compelling reasons" gave it special permission to do so. If no notification were filed with the board by August 31, 1978, by either CEUI or CSEA, then neither union could be a party to an election for designation as exclusive bargaining agent. Both, as individual unions, would be eliminated as participants if a third union filed for an election.[6] The coalition of CEUI and CSEA, of course, would remain as the incumbent exclusive bargaining agent, entitled to participate in the election, provided, however, that this coalition was not severed.
Collective bargaining on behalf of the five units represented by the coalition looking to a new contract to be effective July 1, 1979, was to begin after *240 October 1, 1978. If there were no election prior to October 1, 1978, the then incumbent coalition of CEUI and CSEA would be entitled to do the bargaining. If there were an election and a third union won, that union would be the bargaining agent. If CEUI and CSEA filed individually with the board, the winner would be certified to conduct the bargaining.
In late July, 1978, CEUI instituted the present action against CSEA, alleging, inter alia, that: "On or about July 1, 1978, the defendant, CSEA, and its President ... did, clandestinely and without any prior notification,[7] begin production and dissemination of flyers, letters,[8] petitions and `Authorizations for Representation' by CSEA, and thereafter commenced a campaign against the plaintiff, CEUI, which has as its stated purpose, to denigrate and destroy the plaintiff, CEUI, to sever the ... *241 Coalition Agreement, and to seek designation by the Connecticut State Board of Labor Relations as exclusive bargaining representative of each and every component unit of the `Coalition.'" It also alleged that such actions by CSEA were done in violation of the coalition agreement, and that this breach, which was a "repudiation of the agreement by CSEA," had "prejudiced the ability of the Plaintiff [CEUI] effectively to represent State Employees within the Certified Coalition Units" and would cause injury to the rights of those state employees who chose the coalition to represent them or who are members of or are represented by CEUI. In that regard, CEUI also set out in its complaint paragraph 17[9] of the coalition agreement, which included the following language: "The parties acknowledge that in the case of any breach hereunder, an action at law would be inadequate to protect the interests of the other party, and the parties consent that in such event, the adversely affected party shall be entitled to an injunction or a specific performance as the case may be." This action by CEUI sought injunctive relief, specific performance of the coalition agreement and money damages. CSEA essentially denied all the material allegations of CEUI's complaint.

*242 II
The trial court rejected CSEA's claim that the court did not have jurisdiction.[10] The court concluded that the matter was not a "labor dispute" under General Statutes § 31-112 and was not governed by our so-called "little Norris-LaGuardia Act" (i.e., General Statutes §§ 31-112 through 31-121). The court held that the dispute "is simply a falling out between two unions who had combined to act as an exclusive bargaining agent" and that the action is "covered by simple contract law."
The court next determined it would grant a "limited" permanent injunction. It held that there did not appear to be any adequate remedy at law, and that the plaintiffs were in danger of being both irreparably and substantially harmed.
In fashioning the injunctive relief from which CEUI has appealed, the trial court recognized the impact of House Joint Resolution No. 154 and the state labor relations board's response to it upon the coalition agreement as the agreement had been executed in 1976. The court noted that these changes, which the parties "did not count on and could not anticipate," made the notice requirements concerning intention to terminate the coalition agreement "obsolete and ineffective." It, therefore, found a partial frustration of purpose of the coalition agreement because of this unforeseen legislative and board action. The court further determined that "for all practical purposes ... the Coalition is ended and at loggerheads."
*243 In its opinion, the court was quite concerned with protecting the rights and interests of the state employees who were members of the units in the coalition. It expressly noted that "the unstated but important non-party to this action is the member employees."
The court's injunction order of August 29, 1978, was directed to CSEA, its employees, agents or servants and its president and related to the five certified units for which the plaintiff and defendant unions had jointly negotiated contracts. The injunction stated that "under penalty of $10,000.00 [the above-described parties] are hereby restrained and enjoined from engaging in any action, conduct or making statements to members of the above units, written or otherwise, which are detrimental and derogatory to the plaintiff until June 30, 1979. The injunction expressly does not prohibit the filing of intent cards[11] with the State Board of Labor Relations."[12]
Finally, the court awarded monetary damages. It specifically stated that in view of the "conclusion *244 that the defendants deliberately, over a long period of time, mailed flyers, publications and other papers which were derogatory to plaintiff the contract was breached, and the plaintiff is awarded damages of $5,450.00."
In its appeal, CEUI claims that the trial court erred: (1) in its conclusion of frustration of purpose of the coalition agreement; (2) in failing to conclude that the conduct of CSEA in "terminating" the agreement constituted a breach of contract; (3) in not including in its injunctive relief a prohibition against CSEA filing intent cards with the state labor relations board; and (4) in "considering and relying on a matter neither in evidence nor germane to the instant contract, namely, the `non-party' member employees."
In its cross appeal, CSEA claims that the trial court erred: (1) in concluding that it had jurisdiction rather than the state board of labor relations and in determining that General Statutes §§ 31-112 through 31-121 (the "little Norris-LaGuardia Act") did not prohibit the award of injunctive relief in this matter; (2) in concluding that CEUI had established the elements necessary to obtain injunctive relief; (3) in concluding that CSEA had breached a portion of the coalition agreement and that CEUI was entitled to damages for that breach. Under this latter claim, the defendant specifically contended that the court erred: (1) in not concluding that the plain language, meaning and intent of this agreement permitted CSEA's actions;[13] (2) in using *245 the parol evidence rule to exclude evidence of the intent of the language of the agreement; (3) in its conclusion concerning the frustration of purpose of the agreement relating to the notice of termination and negotiation of a new contract; and (4) in awarding damages without evidence that CEUI was damaged as a result of CSEA's actions.

III
Since the appeal and cross appeal have been taken, a number of intervening circumstances have occurred which have greatly affected the rights and interests of both CEUI and CSEA. The coalition agreement has already long since expired on its own terms; it expired on July 1, 1979. Earlier, on August 31, 1978, CSEA filed petitions with the state labor relations board seeking elections in those units covered by the coalition agreement. CEUI objected to those petitions, and the board, after a hearing, overruled CEUI's objections and directed that elections be held.[14] From October, 1978, to January, 1979, elections took place in all the units represented by the coalition. As a result of these elections, there has been a considerable realignment of those units; the joint certification of CEUI and CSEA has been changed, and both have gained and lost position in those units. The net result of the elections and runoffs has been that CEUI has been certified as exclusive bargaining agent for one unit (Maintenance and Service Unit), CSEA has been *246 certified as exclusive bargaining unit for one unit (Clerical Unit) and two unions other than CEUI and CSEA have been certified as exclusive bargaining agents in the three remaining units.[15] During 1979, the units involved agreed to collective bargaining contracts with the state employer to succeed collective bargaining agreements in effect at the time of the trial.[16] The terms of such agreements range from July 1, 1979, to June 30, 1981, and from July 1, 1979, to June 30, 1982.

IV
CSEA claims that CEUI's appeal, which essentially asks us to expand the injunctive relief granted by the trial court, should be dismissed as moot. We agree.[17] "`It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' Reynolds v. Vroom, 130 Conn. 512, 515, 36 A.2d 22 [1944]; Phaneuf v. Commissioner of Motor Vehicles, 166 Conn. 449, 452, 352 A.2d 291 [1974]; Harkins v. Driscoll, 165 Conn. *247 407, 409, 334 A.2d 901 [1973]; Roy v. Mulcahy, 161 Conn. 324, 328, 288 A.2d 64 [1971]; Maltbie, Conn. App. Proc. § 21. In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law; Reply of the Judges, 33 Conn. 586 [1867]; and where the question presented is purely academic, we must refuse to entertain the appeal. Young v. Tynan, 148 Conn. 456, 459, 172 A.2d 190 [1961]." Connecticut Foundry Co. v. International Ladies Garment Workers Union, 177 Conn. 17, 19, 411 A.2d 1 (1979).
The law set out above, given the intervening circumstances, leads to the inquiry of what, if any, practical relief could follow from a determination of CEUI's appeal; or what actual relief could be granted by this court. See, e.g., Phaneuf v. Commissioner of Motor Vehicles, supra, 452. It would be completely impractical to expand the injunctive relief granted, as CEUI urges us to do, for several cogent reasons.
First, the coalition agreement has long since expired. Second, any cognizable injury suffered by CEUI in the past is not continuing because that injury would not have arisen but for the agreement. There is not now any ongoing election campaign nor any attempt by CSEA to solicit intent cards from CEUI members, nor are such attempts, in the context of a coalition agreement, likely to be repeated. See Southwestern Bell Telephone Co. v. Communications Workers of America, 454 F.2d 1333, 1334 (5th Cir. 1972); Douds v. International Longshoremen's Assn., 242 F.2d 808, 812-13 (2d Cir. 1957). Third, elections ordered by the board, *248 in the units represented by the former coalition, (based upon the intent cards submitted by CSEA and other unions) have long since been held. Giving CEUI the expanded injunctive relief it seeks clearly implicates the overturning of those elections in which the state employees have already made their choices.[18] See Colpo v. Highway Truck Drivers & Helpers, Local 107, 305 F.2d 362 (3d Cir.), cert. denied, 371 U.S. 890, 83 S. Ct. 188, 9 L. Ed. 2d 123 (1962) (holding that an appeal after a union election presented a moot question). See also Bynum v. Burns, 379 F.2d 229 (8th Cir. 1967) (holding that an order requiring members of county election commission to certify the plaintiff as a bona fide candidate for election office could not be granted after election took place). Fourth, collective bargaining agreements have been signed with reference to at least four units of the former coalition, and all contain expiration dates in the future. Rights and interests of persons, both natural and corporate, who are not parties to this action would be affected, by a determination of this appeal. Equity cannot act where parties to be affected are not before the court or have not been given the opportunity to be heard. See Bynum v. Burns, supra, 233. In reaching our conclusion, in addition to considering the impact on the circumstances of the individual employees, the new collective bargaining agreement and the present representative *249 alignment, we also keep in mind the doctrine that courts will act with extreme caution where the granting of injunctive relief will result in embarrassment to the operations of government. See Wood v. Wilton, 156 Conn. 304, 310, 240 A.2d 904 (1968); Coombs v. Larson, 112 Conn. 236, 247, 152 A. 297 (1930).

V
CSEA has cross appealed and challenges both the injunctive relief granted and the award of $5450 damages. With regard to the claimed error of the trial court in granting the injunction, we note that those same circumstances which rendered CEUI's appeal moot render this aspect of CSEA's cross appeal moot.
We also note that the appeal of CEUI, and, for that matter, the cross appeal of CSEA with regard to the issue of injunctive relief, do not present a situation "capable of repetition, yet evading review." See Connecticut Foundry Co. v. International Ladies Garment Workers Union, supra, 20-21; Rosnick v. Zoning Commission, 172 Conn. 306, 309, 374 A.2d 245 (1977); see Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515-16, 31 S. Ct. 279, 55 L. Ed. 310 (1911). In Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975), the United States Supreme Court concluded that "in the absence of a class action, the `capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected *250 to the same action again." (Emphasis added.) See Connecticut Foundry Co. v. International Ladies Garment Workers Union, supra, 20-21. The present case, which is not a class action, clearly fails to satisfy the latter element because the record does not furnish any basis to expect these two unions to combine again under a similar coalition agreement.

VI
Although the bedrock aspect of both of these appeals, i.e., whether the court erred in granting injunctive relief, has been rendered moot, there still remains the question of whether the court erred in awarding CEUI $5450 in damages. In its cross appeal, besides claiming error with respect to the injunctive relief granted by the court, CSEA challenges the award of damages to CEUI and contends that even assuming there were a breach of contract, the court erred in awarding damages of $5450 to CEUI. We agree.[19]
In the last complete sentence of its memorandum of decision, after stating that "[t]here does not appear to be any adequate remedy at law" and that "money damages [are] ... almost impossible to determine," the court, in addition to granting injunctive relief, then goes on to state: "In view of the court's conclusion that the defendants deliberately, over a long period of time, mailed flyers, publications and other papers which were derogatory to plaintiff, the contract was breached, and the plaintiff is awarded damages of $5,450.00."
*251 This court may reverse or modify the decision of the trial court if the decision is clearly erroneous in view of the evidence and pleadings in the whole record. Practice Book § 3060D; Pandolphe's Auto Parts, Inc. v. Manchester, 181 Conn. 217, 221, 435 A.2d 24 (1980). Although the court granted the plaintiff $5450 in damages, it did not set forth anywhere in its decision the basis for such an award. As compensatory damages, the award cannot stand since we have been pointed to no evidence nor has the trial court indicated any which would justify such an award. See Bertozzi v. McCarthy, 164 Conn. 463, 468, 323 A.2d 553 (1973); Norwalk Door Closer Co. v. Eagle Lock & Screw Co., 153 Conn. 681, 689, 220 A.2d 263 (1966).
CEUI, in its reply brief, contends that the award should stand as either punitive or nominal damages. The award clearly cannot stand as punitive damages. "Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. Collens v. New Canaan Water Co., 155 Conn. 477, 489, 234 A.2d 825 [1967]; Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 128, 222 A.2d 220 [1966]; Hall v. Smedley Co., 112 Conn. 115, 119, 151 A. 321 [1931]. If awarded, they are restricted to cost of litigation less taxable costs of the action being tried and not that of any former trial. Collens v. New Canaan Water Co., supra, 488; Seidler v. Burns, 86 Conn. 249, 251, 85 A. 369 [1912].... Further, for an award of punitive damages, it is essential that evidence of the cost of the litigation of the case being tried must be offered. Yavis v. Sullivan, 137 Conn. 253, 261, 76 A.2d 99 [1950]; Chykirda v. Yanush, 131 Conn. 565, 569, 41 A.2d 449 [1945]." Vandersluis v. Weil, 176 *252 Conn. 353, 358-59, 407 A.2d 982 (1978). CEUI has not pointed to any evidence offered relative to punitive damages that would justify their award as such.[20]
The award of $5450 also cannot be upheld as nominal damages. "Nominal damages are usually fixed at one cent, one dollar, or some similar small amount.... While no exact standard has been fixed as to what amount should be given as nominal damages, it must be `insubstantial,' a few cents or dollars." McCormick, Damages § 21, p. 87.[21] We have had occasion to note that: "Nominal damages mean no damages. They exist only in name and not in amount." Sessa v. Gigliotti, 165 Conn. 620, 622, 345 A.2d 45 (1973), and cases cited therein.[22]
*253 Although the appeal has been rendered moot, and the cross appeal with regard to this issue of injunctive relief is also moot, since the award of $5450 in damages cannot be upheld, we find error in the cross appeal and remand the cross appeal with direction to vacate the award of damages in the judgment.
In this opinion the other judges concurred.
NOTES
[1] At that time, CEUI had a membership of about 5500, and CSEA had some 33,000 members.
[2] In speaking of this coalition agreement, the trial court noted, inter alia: "It is a sixteen page document with innumerable details, which bespeaks the arms-length dealings prior to its executions."
[3] Paragraph sixteen of the coalition agreement provided: "16. This agreement shall not be terminated or cancelled in regard to any unit from the date of election results through the life of the initial contract secured for such unit. In the event either organization wishes to terminate this agreement at the expiration of the contract for a unit, then such organization shall give the other organization not less than ninety (90) calendar days nor more than one hundred and twenty (120) day notice prior to the contract termination date for such unit, in writing, by certified mail, return receipt requested, or by hand delivery of the notice. Upon such notice of termination, the parties shall make a full accounting to each other and establish a committee on which each has equal representation to carry out the separation as amicably as possible.

"If neither organization gives notice of its intent to terminate this agreement in a particular unit after the above mentioned time periods, then, for each such unit, this agreement shall continue under the same terms and conditions expressed herein throughout the term of any successive collective bargaining contract and for any period which may exist prior to the negotiation of such new contract on behalf of state employees in any such bargaining unit."
[4] The trial court expressly found that the coalition agreement effected "no structural merger but a cooperation, under the Agreement, in providing services for the unit members for which they had been designated the joint exclusive bargaining agents."
[5] The trial court, in its memorandum of decision, noted parenthetically that "[w]hile the resolution does not state this date, calculations by the parties based on the contents of the resolution indicate this is about the deadline."
[6] There was evidence before the trial court that at least one other union was seeking to qualify.
[7] In paragraph 15 of its complaint, CEUI set out a portion of the coalition agreement as follows: "15. The Coalition agreement of December 30, 1976 further states that, in paragraph 16: `This agreement shall not be terminated or cancelled in regard to any unit from the date of election results through the life of the initial contract secured for such unit. In the event either organization wishes to terminate this agreement at the expiration of the contract for a unit, then such organization shall give the other organization not less than ninety (90) calendar days nor more than one hundred and twenty (120) day notice prior to the contract termination date for such unit, in writing, by certified mail, return receipt requested, or by hand delivery of the notice.'" (Emphasis added.)
[8] In its complaint CEUI set out a portion of paragraph 13 of the coalition agreement. Paragraph 13 provides in full the following: "13. Neither organization shall engage in any action, conduct or make any statements detrimental to the other organization during the life of this agreement, providing if the ninety (90) day notice, as provided for below, in the event either party intends to terminate this agreement has been forwarded to the other party to this contract, then this section shall become inoperative thirty (30) days after the forwarding of such notice. The parties hereto pledge to each other their mutual aid and cooperation to carry out the purposes of this agreement and to advance the cause of state employees."
[9] Paragraph seventeen to the coalition agreement provided in its entirety the following: "17. Upon the breach of this agreement by any party, the party adversely affected by such breach may enforce its rights hereunder either by suit in equity or by action at law, or both, or by any other appropriate proceedings. Such party may obtain specific performance of, or an injunction against the breach of, any covenant, condition, or provision contained herein, or on any document delivered pursuant to this agreement. The parties acknowledge that in the case of any breach hereunder, an action at law would be inadequate to protect the interests of the other party, and the parties consent that in such event, the adversely affected party shall be entitled to an injunction or a specific performance as the case may be."
[10] In overruling CSEA's claim that this matter was within the exclusive jurisdiction of Connecticut state board of labor relations, the trial court also said that the dispute in this case "does not fall within the abuses which the Labor Act was designed to prohibit."
[11] The trial court pointed out that: "Intent or authorization cards are cards signed by employees and signify that the signers want a particular union to represent them in collective bargaining." See General Statutes § 5-275 (a).
[12] The temporary injunction which the court had issued on August 9, 1978, ordered, inter alia, that "[a]ny `intent' cards collected by the defendant union will be held by it and not filed with the Connecticut State Board of Labor Relations prior to August 31, 1978, pending this Court's decision on plaintiff's application for a permanent injunction." At the time it entered its permanent (but limited) injunction on August 29, 1978, it dissolved the temporary injunction.

After the trial court issued its permanent injunction, on August 29, 1978, it denied, on August 31, 1978, CEUI's motion for a stay of its permanent injunction until the final decision by the Supreme Court in this matter. It also denied, on September 6, 1978, CEUI's "Motion and Application for Continuance of Temporary Injunction [of August 9, 1978]"; CEUI has not appealed from that denial.
[13] CSEA maintained that the matters alleged in CEUI's complaint did not constitute a breach of the coalition agreement. It refers to the so-called zipper clause (paragraph 21) of the agreement to support its claim that its conduct was not in breach, arguing that unless the plaintiff can point to a specific restriction stated in the agreement, no court should have restrained the actions of the defendants.

Paragraph 21 of the agreement provides the following: "21. This agreement constitutes the entire agreement between the parties as to the subject matter hereof and supersedes any prior oral or written agreements between the parties as to such subject matter."
[14] CEUI did not appeal this ruling of the board.
[15] This is based on information, not disputed, in CSEA's brief which was filed on April 24, 1980. As of that time, CSEA's brief states that of the approximately 24,000 state employees formerly represented by CSEA and CEUI, CEUI represented approximately 8000, CSEA represented approximately 7500 and the others were represented by other unions.
[16] The unit represented by CEUI had not yet, as of the time CSEA's brief was written, signed a successor collective bargaining agreement, although it was in the process of voting on one.
[17] In its cross appeal, CSEA claims that under the provisions of the "little Norris-LaGuardia Act," General Statutes § 31-112 through 31-121, the trial court did not have jurisdiction to enter any injunctive relief against CSEA. Since we conclude that the issue of injunctive relief is moot, we need not discuss this claim.
[18] We feel that there is no merit in CEUI's claim that the court erred in considering and relying on a matter neither in evidence nor germane to the coalition agreement, i.e., the non-party member employees of the units of the coalition. The trial court and the state labor relations board, in overruling CEUI's objections to the petitions for elections in 1978, both noted the importance to the individual employees of construing the coalition agreement to protect their rights and interests.
[19] Since we find error in the cross appeal, and remand the case with direction to vacate the $5450 award, we need not discuss CSEA's other claims of error with respect to the trial court's conclusion of a breach of contract.
[20] The trial court did not state that the evidence "shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights." See Vandersluis v. Weil, 176 Conn. 353, 358-59, 407 A.2d 982 (1978).
[21] Professor McCormick continues: "This inexactness has led to confusion in a few opinions which have treated the matter as being entirely relative, and have said that an amount which is trivial when compared to the amount involved in plaintiff's claim is `nominal' and on that basis have sustained as `nominal' awards of $150 and $250. This is wholly at variance with the generally accepted practice which, regardless of the amount claimed or involved, would consider as `nominal' only an amount such as a few cents or a few dollars, say not more than $10."
[22] This court, in fact, has noted that "in the strict and proper use of the term," nominal damages could not be awarded in the amount of $340; Buden v. Dombrouskas, 147 Conn. 728, 730, 166 A.2d 157 (1960). We also have refused to reverse as error, except in cases involving injury to a "substantial right"; see Riccio v. Abate, 176 Conn. 415, 419 n.2, 407 A.2d 1005 (1979) ("[t]raditionally, only the invasion of a property right has been accorded such substantiality") ; the failure of the trial court to award nominal damages even if the defendant were found liable. See Riccio v. Abate, supra, 419; Sessa v. Gigliotti, 165 Conn. 620, 622, 345 A.2d 45 (1973); Waicunas v. Macar, 151 Conn. 134, 139, 193 A.2d 709 (1963).