[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The state commissioner of health services brings this action against the Town of New Milford and against Catherine M. Reynolds in her capacity as tax collector of the town. The commission seeks an order enjoining the defendants from proceeding with a tax foreclosure sale of two lots in New Milford pursuant to C.G.S. 12-157 and 12-172. The basis of the plaintiff commissioner's action is his contention that the lots are Class I land, as defined by C.G.S. 25-37c, and are part of the public water supply system in New Milford. Pursuant to C.G.S. 25-32 (d), such land may be sold only to a water company and with the prior permission of the commissioner. The defendant tax collector intends to proceed with the sale without regard to the qualifications of the purchaser and without the permission of the commissioner. The sale is scheduled for November 13, 1990.
The lots in question are owned by Hycliff Builders, Inc., which is delinquent in taxes owed the town. The lots are located in the Camelot Estates subdivision in the town and each of them contains wells. These wells are used by Camelot Estates Water Company to supply water to one hundred and eighty customers in the subdivision. Neither Hycliff Builders, Inc., nor Camelot Estates Water Company is a party to this action.
Although, a party seeking injunctive relief must ordinarily prove irreparable harm and lack of an adequate remedy at law, that rule is relaxed in the case of a public agency seeking to enforce the provisions of a statute. Conservation Commission v. Price, 193 Conn. 414 (1984). Nevertheless, courts must act with extreme caution where the granting of an injunction will hamper the operations of CT Page 4005 government. CEUI v. CSEA, 183 Conn. 235, 249 (1981). This is especially true where the objective is to enjoin the collection of taxes. Hartford v. Faith Center, Inc., 196 Conn. 487, 492
(1985). In this case, there are significant governmental interests in competition with each other. On the one hand is the state's duty to ensure the purity and availability of the public water supply. On the other is the town's need for revenue.
Because of this conflict, the court is especially mindful of the general rule that "(t)he issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justifiable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the "imminence of substantial and irreparable injury". Karls v. Alexandra Realty Corporation, 179 Conn. 390 (1980). (Emphasis added). It is, therefore, necessary to examine the circumstances of this case to determine whether the tax sale poses an imminent, substantial, and irreparable injury to the public water supply.
Section 12-157 of the general statutes sets forth the procedure to be followed in collecting taxes by levy and sale of real property. Pursuant to that statute, the tax collector may sell the property for the amount of the unpaid taxes to any bidder or, if there is no bidder for that amount, the sale may be to the municipality. In either event, however, the purchaser does not immediately take title or possession. Instead, the tax collector's deed is held, unrecorded, for one year from the date of sale. During that year, the delinquent taxpayer may redeem the property by paying the tax plus interest to the purchaser at the tax sale or to the municipality if there was no purchaser.
The statutory delayed action sale process, described above, significantly diminishes the imminence of any danger to the interests which the plaintiff commissioner is required to protect. Any bidder willing to pay the amount of accumulated unpaid taxes, about $15,000 in this case, may purchase the property. Conceivably, a public water company capable of obtaining the commissioner's permission would be a purchaser. There is at least one other water company in the town in addition to Camelot Estates Water Co. that would be eligible. Even if the sale were made to a purchaser which is not presently eligible for a state permit, such purchaser would have ample time to apply for the permit before it could take title and possession. Likewise, the commissioner would have ample time to bring an action such as this one to block the ultimate acquisition by an ineligible purchaser. In any event, CT Page 4006 the status quo would be maintained for one year. During that year, the present owner could nullify the tax sale by redeeming its interest for the amount of the unpaid taxes. In short, it is simply too soon to determine whether the tax sale poses any threat to the public water supply or whether the sale would result in the acquisition of the property by someone lacking the prescribed permission of the plaintiff commissioner.
The circumstances of this case do not call for court intervention at this time. "Injunctive relief may not lie where it is predicated on the fears and apprehensions of the party applying for it. . .and likewise the power of equity to grant such relief may be exercised only under demanding circumstances." Karls v. Alexandra Realty Corp., supra, 402. Of course, the picture may change, depending upon the outcome of the tax sale; in particular, the identity of the purchaser if any, may require the commissioner to seek, new action by this court. In the present action, however, for all of the reasons set forth above, the temporary restraining order issued by this court (O'Neill, J.) on August 17, 1990, is vacated; the plaintiff's petition for enforcement by injunction is denied, and judgment may enter for the defendants. The foregoing is without prejudice to the commissioner's right to continue to enforce the applicable statutes in the event the tax sale, as it actually develops, poses an imminent threat that the applicable water supply statutes will be violated.
Maloney, J.