[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this case, William LaFleur, in his third amended complaint, dated October 21, 1992, hereinafter called the complaint, (original complaint was filed November 22, 1989) alleged that he is 28 years old, has a mental disability and is civilly committed to the defendant Whiting Forensic Institute, which is under the supervision and direction of the defendant, Connecticut State Department of Mental Health, Michael F. Hogan, Commissioner. He has also alleged that defendant Hogan and defendant Robert M. Phillips are responsible for the administration and operation of Whiting and that defendant Carl E. Chi and defendant Enayat Khorramzadeh are responsible for all clinical decisions relating to the plaintiff at Whiting. In his complaint, the plaintiff specifies various ways in which he claims that he has not been appropriately treated since December 4, 1985, and that he has suffered and continues to suffer irreparable injury for which he has no adequate remedy at law. He claims:
1. He has been deprived "of his liberty interests secured by the Connecticut Constitution Article I, Sections 8, 9, 10, and 20, as amended, to be free from unreasonable bodily restraints and seclusion and medically harmful drugs and procedures."
2. He has been denied his "rights to humane and dignified treatment with full respect for his personal dignity and right to privacy, his right to privacy, his right to be free from continuous and ongoing seclusion and restraint, his right to family visitation, and his right to a specialized treatment plan suited to his disorder," in violation of Conn. Gen. Stat. Sections 17-206 (a) through (k).
3. He has been denied "his liberty interest secured by the due process clause of the Fourteenth Amendment of the United States Constitution to be free from misuse of restraints, seclusion, forced medications, and medical procedures." He also alleges that the defendants "acts and omissions have also denied Mr. LaFleur his federally recognized rights to adequate treatment and training" under 42 U.S.C. § 1983.
In his claims for relief, Mr. LaFleur seeks six permanent injunctions, having elected to pursue appropriate relief in the form of injunctive relief. Connecticut law is quite clear on the issue of when injunctive relief is appropriate.
 Injunctive relief is appropriate only where two conditions are met: the plaintiff must allege and prove that absent CT Page 8296 such relief he will suffer irreparable injury; and he must allege and demonstrate that he has no adequate remedy at law.
Connecticut Mobile Home Assn., Inc. v. Jensen's, Inc., 178 Conn. 586,592 (1979).
 Our cases establish that the imminence of irreparable injury and the absence of an adequate remedy at law are ordinarily prerequisites to the granting of injunctive relief.
Policemen Firemen's Retirement Board v. Sullivan, 173 Conn. 1, 12 (1977).
 Relief by way of mandatory injunction is an extraordinary remedy granted in the sound discretion of the court and only under compelling circumstances.
Simmons v. Budds, 165 Conn. 507, 515 (1973).
 The issuance of an injunction, which is an extraordinary remedy, requires . . . that their aggrievement constitutes a justiciable interest in the controversy in question, one fact of which is founded on the imminence of substantial and irreparable injury. Bendell v. Johnson, 153 Conn. 48, 51, 212 A.2d 199. The granting of an injunction rests in the sound discretion of the court and cannot be demanded as a matter of right. Ginsberg v. Mascia, 149 Conn. 502, 505, 182 A.2d 4.
Jones v. Foote, 165 Conn. 516, 521 (1973).
 . . . in the case of actions praying for a declaratory judgment or injunctive relief, since the remedy sought is prospective, the right to such relief is determined by the situation which has developed at the time of trial and not by that existing at the time the action was begun. Holt v. Wissinger, 145 Conn. 106, 115, 139 A.2d 353; Newington v. Mazzoccoli, 133 Conn. 146, 150, 48 A.2d 229.
Edward Balf Co. v. East Granby, 152 Conn. 319, 323 (1965).
Given the above required legal framework for the construction of a case seeking injunctive relief, the court must weigh all of the evidence and credibility of the witnesses and then determine whether the plaintiff has sustained his burden of proving by a fair preponderance of the evidence the essential elements of his complaint. CT Page 8297
As a starting point, he must prove that he has no adequate remedy at law. The general nature of the complaint is that the Connecticut Mental Health Department, as represented by the Whiting Forensic Institute, Whiting's administrator, and two psychiatrists employed at Whiting, have failed, by acts of omission and commission, to provide the plaintiff with the care he is legally entitled to.
If these allegations have been proved by the plaintiff, the court sees no avenue which could lead to a satisfactory remedy for these complaints other than injunctive relief, which would force the defendants to stop doing to the plaintiff what they shouldn't be doing, and to start doing what they should be doing. For example, if he isn't getting a drug he needs, or is getting a drug that is harmful, only an injunction can correct the situation. The court finds that the plaintiff has proved that, if his rights have been violated, the granting of injunctive relief would be the only appropriate relief.
The court must go on to determine whether the plaintiff has proved first, that any of his rights are being violated, and, if so, that if an injunction does not issue, he is in imminent danger of irreparable harm.
In the first count of the complaint, the plaintiff alleged that the defendants failed to allow him to be free from unreasonable bodily restraints, seclusion and medically harmful drugs and procedures. There were exhibits and extensive testimony on this issue; from the defendants Dr. Chi and Dr. Khorramzadeh, from Dr. Tardif, the plaintiff's expert, and Dr. Maier, the defendant's expert. The evidence produced was conflicting in some respects, such as what constitutes an emergency situation and when certain restraints and seclusion were appropriate for the protection of Mr. LaFleur and others, and what constitutes "imminent physical danger". In assessing whether the restraints, seclusion, drugs and procedures used by the defendants were appropriate, the court "must inquire not whether the hospital has made the best decision possible, but rather whether its treatment plan was permissible and reasonable in view of the relevant information available and within a broad range of discretion." Mahoney v. Lensink, 213 Conn. 548,567 (1990). Dr. Tardif, plaintiff's expert, testified that when he visited the plaintiff in 1989, he considered it to be a very complicated and difficult case, that the plaintiff was toward the severe end of a violence type case, and that the defendants had been making good faith efforts, and were doing the best they could with the resources they had available. He said that comparing his 1989 review of this case to other cases he's reviewed in other institutions, he has seen better treatment and worse treatment, but only CT Page 8298 a few that were better. He also said that from 1989 to date, the defendants' use of outside doctors was appropriate and a good faith effort to improve plaintiff's care. Dr. Tardif stated that since October 1991, plaintiff had been free of restraints except for isolated instances, and that the defendants have been making reasonable efforts to wean him from restraints.
The Supreme Court of the United States has considered this issue of judgment exercised by a qualified professional.
 . . .minimal adequate training required by the Constitution is such training as may be reasonable in light of respondent's liberty interests in safety and freedom from unreasonable restraints. In determining what is `reasonable'. . . in this and in any case presenting a claim for training by a state . . . we emphasize that courts must show deference to the judgment exercised by a qualified professional. By so limiting judicial review of challenges to conditions in state institutions, interference by the federal judiciary with the internal operations of these institutions should be minimized.
Youngberg v. Romeo, 457 U.S. 307, 322, 102 S.Ct. 2452 (1982). Dr. Tardif testified that he is familiar with the Youngberg standard, supra, and the defendants met this standard.
The court finds that the plaintiff has not proved by a fair preponderance of the evidence that any of the defendants have deprived him of his liberty interests as alleged in paragraph 10 of the first count.
The plaintiff has not proved that he has been subjected to medically harmful drugs and procedures. The credible testimony offered on this issue was not sufficient to sustain the plaintiff's burden of proof.
In the second count, the plaintiff alleged that the defendants denied Mr. LaFleur's rights to humane and dignified treatment with full respect for his personal dignity and right to privacy, his right to be free from continuous and ongoing seclusion and restraints, his right to family visitation, and his rights to a specialized treatment plan suited to his disorder, such rights being mandated by Conn. Gen. Stat. 17-206 (a) through (k).
Sections 17-206 (a) to 17-206 (k) are now sections 17a-540 to17a-550 inclusive. CT Page 8299
Section 17a-542 provides that "every patient treated in any facility for treatment of the mentally disordered shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder."
Referring to the above statute, the plaintiff alleges on page 37 of his memorandum of law dated March 17, 1993, that the defendants' use of female staff to escort the plaintiff to the bathroom violates his right to privacy and personal dignity. It is true that on September 2, 1992, the plaintiff used a toilet in a stall with the door left open so a female staff member could keep him under a one to one observation. The court believes the testimony of Dr. Chi that the plaintiff was aware of hospital policy that permitted him to request that a male staff member escort him to the bathroom, but that he chose not to make such a request.
The court has already discussed above in reference to the first count, the issue of seclusion and restraints. As to the plaintiff's right to a specialized treatment plan suited to his disorder, the record is replete with credible evidence that the defendants formulated and carried out an appropriate specialized treatment plan suited to Mr. LaFleur's disorder. As to his right to family visitation, in his claim for relief, Mr. LaFleur has not asked for an injunction relating to visitation. In addition, his sister, Anna Joyner's testimony was that for a substantial period of time prior to, and leading up to the time of trial, the plaintiff's family was allowed sufficient opportunity for meaningful visitation.
The court finds that the plaintiff has not proved that any of the defendants have denied him any of the rights as alleged in paragraph 12 of the second count.
In the third count, the plaintiff has alleged that the defendants have denied his liberty interest secured by the due process clause of the14th Amendment of the U.S. Constitution, to be free from misuse of restraints, seclusion, forced medications and medical procedures. The plaintiff also claims in the third count that the defendants have denied him his federally recognized rights to adequate treatment and training under 42 U.S.C. § 1983.
As to the third count claims relative to misuse of restraints, seclusion, forced medications and medical procedures; the evidence presented, viewed as a whole, leads the court to conclude that the plaintiff has not proved that the decisions made by the defendants CT Page 8300 in these matters, and the treatment provided, which are presumptively valid, constituted a "substantial departure from accepted professioal [professional] judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such judgment. Youngberg v. Romeo, supra, 323. The presumption has not been rebutted; no constitutional violations have been proved.
With respect to the other third count allegation under42 U.S.C. § 1983, the plaintiff must prove that he has been deprived of a right, privilege or immunity secured by the Constitution and laws, under color of any statute, custom or usage of the State of Connecticut. He claims he has been denied his federally recognized rights to adequate treatment and training.
 The United States Supreme Court has held, in the context of 1983 actions that acts of mere negligence do not violate an individuals's rights under the due process clause of the United States Constitution . . . . As the Appellate Court appropriately noted, `facts similar to these alleged here by the plaintiff[s] that is, failure to restrict or control a patient so as to prevent suicide have been held to be sufficient to allege such a degree of wanton neglect so as to state a cause of action for violation of a patient's rights under 42 U.S.C. § 1983.'
Mahoney v. Lensink, supra, 572.
Dr. Tardif, plaintiff's expert witness testified that occupational and recreational therapy was made available prior to Dr. Tardif's 1989 visit, and that the treatment plan, of March 20, 1992, which includes behavioral, educational and recreational aspects, contains "very appropriate recommendations." He also testified that the plaintiff had appropriate access to recreational activities. Dr. Chi testified that at times he's had access to art and music, as well as to rehabilitation therapy. The plaintiff has not proved that medication was used as a substitute for rehabilitation. The March 20, 1992 discharge summary from Whiting shows that Mr. LaFleur had been attending activities and pre-GED classes prior to his transfer to Fairfield Hills Hospital. His sister testified that he is going to arts and crafts lessons, to the gym and outdoor recreation.
The plaintiff has not proved deprivation of any constitutionally protected interests, and therefore there is no underlying basis for a U.S.C. § 1983 claim. CT Page 8301
The parties have raised the issue of whether the plaintiff is a mentally retarded person. The court finds that based on the evidence presented on this issue, that he is not.
The plaintiff has also alleged improper use of electro-shock treatments and involuntary forced psychotropic medications in place of an appropriate treatment plan. The evidence presented on these issues was not sufficient to persuade the court by a fair preponderance of the evidence. Professional judgment decisions were made in a good faith effort to help Mr. LaFleur. Furthermore the evidence showed that from 1989 until trial in late 1992, there was no indication of any intent to use electro-convulsive therapy. Also such treatments cannot be administered without the patient's informed written consent, unless he's incapable of such consent; in which case only the probate court can order these treatments, after a hearing and a finding that the patient is incapable of informed consent, and there is no other reasonable alternative procedure. Conn. Gen. Stat. 17a-543 (d). When the plaintiff's shock treatments were approved by the Middletown Probate Court, he was represented by an attorney.
The plaintiff has alleged in his March 17, 1993 memorandum of law, that the defendants without authorization disclosed his medical, psychiatric and other records to Dr. Maier, the defendants' expert, and to the Joint Commission on Accreditation of Psychiatric Hospitals, whose four representatives came to Whiting to review files for accrediting purposes. One of the four was a psychiatrist and only that person saw plaintiff's records. No patient identifiable information was on their report.
The court finds that the plaintiff's records were permissibly disclosed to Dr. Maier, because the plaintiff, by bringing this action, introduced his mental condition as an element of his claim, (Section 52-146f(5)); and permissibly disclosed to JCAHO because the examiner was doing a quality control, peer review of the hospital, under contract with defendant Hospital. This qualifies as research under Section 52-146g of the Conn. Gen. Stat., and therefore allows access to Mr. LaFleur's records. Furthermore there was no allegation in the complaint that anyone improperly disclosed the plaintiff's records.
The plaintiff has further claimed that the defendants' delay in providing him with the drug Clozapine was due to their administrative convenience, thereby depriving him of appropriate treatment.
The fact is that the plaintiff has had Clozapine available to him since September, 1991; there is no basis for concluding that injunctive relief regarding Clozapine would be necessary or appropriate. Also CT Page 8302 testimony in this case showed that there was a reasonable basis for the delay.
Even though the court has found that the plaintiff has not proved by a fair preponderance of the evidence a deprivation of any of the rights for which he seeks relief, the court will briefly discuss the plaintiff's burden to prove, even if he had established a rights deprivation, that if injunctive relief were not granted, he would be in imminent danger of substantial and irreparable injury. See Bendell v. Johnson, supra,
 `[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects.' To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.
Society of Separationists, Inc. v. Herman, 959 F.2d 1283, 1285 (5th Cir. 1992), (quoting City of Los Angeles v. Lyons, 461 U.S. 95,103 (1983)).
 It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances. Leo Foundation v. Cabelus, 151 Conn. 655, 657, 201 A.2d 675. `No court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it . . .' Goodwin v. New York, N.H. and H.R. Co., 43 Conn. 494, 500; Ginsberg v. Mascia, 149 Conn. 502, 505, 182 A.2d 4.
Nicholson v. Connecticut Half-Way House, Inc., 153 Conn. 507, 511 (1966).
The plaintiff left Whiting Forensic Institute during this trial in November 1992 for residence at Fairfield Hills Connecticut Hospital, in a specialized treatment unit, where he was under the supervision and direction of D.M.H. On March 26, 1993, he left the hospital on a leave of absence status, and on June 7, 1993, he was discharged from the hospital. While at Fairfield Hills, the unit he was in was an intermediate state between Whiting Forensic Institute and an open environment as in a regular hospital setting.
Plaintiff's expert, Dr. Tardif visited Whiting Forensic Institute in July, 1989, and submitted a written report with recommendations concerning the care of the plaintiff. He returned for a follow-up visit in December, 1991. During his testimony in this case in October, 1992, Dr. Tardif said, why am I in court; they did what I suggested, and now he's better. Anna CT Page 8303 Joyner, plaintiff's sister, testified that since October, 1991, Mr. LaFleur has had a tremendous change for the better; he's more alert, less moody, not as depressed; and that all has changed and he has plans for the future and is 100% better.
She also testified that since October, 1991, he has only occasionally been in restraints, and then only as needed.
Dr. Tardif testified that in December, 1991 he saw that his recommendations had been implemented; the plaintiff was friendly, coherent, in control, optimistic, temper under control, more interactive with staff, and greatly improved. He further testified that he reviewed the September 16, 1992 Treatment Plan, that it is appropriate and that he agrees with it.
The court grants the defendants' request to strike from the record Appendix I and Appendix II to the plaintiff's memorandum of law dated March 17, 1993. The court has taken judicial notice of the two unreported decisions of the Ninth Circuit Court of Appeals, Charles B., et al. v. Kevin Concannon, filed November 23, 1992, and Nina Jordan v. Booth Gardner, cited as 1993 WL 48830 (9th Cir. (Wash.).
The court finds as follows:
1. The plaintiff has not sustained his burden of proving any violation of his statutory and constitutional rights.
2. Even if he had proved any such violation, he has not sustained his burden of proving that absent injunctive relief, he is in imminent danger of suffering substantial and irreparable injury.
Inasmuch as the issue of mootness has been raised in this case, the court must consider it.
Initially the trial of this case ended on December 11, 1992. However, on June 7, 1993, the plaintiff was discharged from the custody of the Department of Mental Health, and the trial was reopened. On August 6, 1993, evidence was received establishing that since his discharge the plaintiff had not received services from any entity owned or operated by the Department of Mental Health.
The question presented is whether, in a suit for injunctive relief to enjoin the defendants from rendering inappropriate treatment to the plaintiff, the fact that the plaintiff has been officially discharged from the defendants' custody and is not receiving services from any CT Page 8304 entity owned or operated by the Department of Mental Health, renders this case moot. The defendants in effect are claiming that even if the court were to determine that the plaintiff is entitled to one or more of his claims of injunctive relief, this would not result in any practical relief to him, because he has been discharged and is not receiving services from any of the defendants.
 `It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' . . . Shays v. Local Grievance Committee, 197 Conn. 566, 571, 499 A.2d 1158 (1985). Perry v. Perry, 222 Conn. 799, 803, 611 A.2d 400 (1992). This court will not render advisory opinions. See Moshier v. Goodnow, 217 Conn. 303, 306, 586 A.2d 557 (1991). `If there is no longer an actual controversy in which we can afford practical relief to the parties, we must dismiss the appeal.' Sadlowski v. Manchester, [206 Conn. 579, 583, 538 A.2d 1052 (1988)]. Board of Education v. New Haven, 221 Conn. 214, 216, 602 A.2d 1018 (1992).
Orsi v. Senatore, 31 Conn. App. 400, 424 (1993).
In the case at hand, it is clearly impossible to presently provide the plaintiff the specific practical relief he is seeking, since none of the defendants are involved in his care at the present time. However, the court's inquiry will not stop here because of the "capable of repetition, yet evading review" exception to the mootness doctrine. plaintiff has been treated for mental illness for approximately the last fifteen years, since his boyhood. He has been institutionalized for almost as many years in different state mental health facilities, and being indigent, relies on state aid for his care. He has a history of unprovoked and random acts of violence against fellow patients and health care personnel. He has undergone several extended periods of treatment at state facilities, particularly Whiting Forensic Institute, consisting of medication, seclusion, partial and total restraint, and electro-shock therapy, under the authority of the Commissioner of Mental Health.
On June 7, 1993, the plaintiff was discharged from the care and custody of the Department of Mental Health and is receiving services from entities that are not State of Connecticut facilities. The plaintiff's discharge was made possible to a large extent by the utilization of a new drug, which has proved to be very effective in the treatment of sickness CT Page 8305 such as his. However, his freedom from a state mental health facility, as of the end of trial, was of only two month's duration, after fifteen years of confinement.
Connecticut Supreme Court cases have adopted the "capable of repetition, yet evading review" test when considering a mootness question in a non-class action suit. See generally, Taylor v. Robinson, 171 Conn. 691,694 (1976); CEUI v. SCEA, 183 Conn. 235, 249 (1981); Delevieleuse v. Manson, 184 Conn. 434, 437 (1981). The test as to whether an issue is indeed capable of repetition, yet evading review is two-pronged; (a) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (b) there was reasonable expectation that the same complaining party would be subjected to the same action again. Hartford Principals' Supervisors' Association v. Shedd, 202 Conn. 492, 499 (1987).
In Hartford Principals', the issue at bar was not injunctive relief; however, previous cases seeking injunctive relief have not identified a separate test for determining mootness. In fact, the court uses the same standard test for mootness as to injunctive relief as it does for all issues of mootness. See Waterbury Hospital v. Connecticut Health Care Associates, 186 Conn. 247, 253, (footnote 5) (1982); Connecticut Foundry Co. v. International Ladies Garment Workers Union, 177 Conn. 17, 20, (1979); Rosnick v. Zoning Commission, 172 Conn. 306, 309 (1977). For example, Waterbury Hospital, a case concerning the request for an injunction, cited Delevieleuse as a correct statement of the test for mootness, even though Delevieleuse did not concern a request for injunctive relief, but instead concerned a request for a writ of habeas corpus where the plaintiff claimed he had not been given sufficient credit time toward his sentence under Conn. Gen. Stat.18-97. Waterbury Hospital, supra, 253 (footnote 5); Delevieleuse, supra, 434. It is consistent, therefore, that the test for mootness as to non-class actions is the same as in an action for injunctive relief.
 In Delevieleuse v. Manson, 184 Conn. 434, 437, 439 A.2d 1055
(1981), we stated that the `capable of repetition, yet evading review principle was not, in and of itself, a justification for reviewing an admittedly moot case but was merely one factor to be considered when faced with a potentially moot matter. Other relevant factors include: (1) the public importance of the question presented; (2) whether an ongoing program of the state's penal or civil system is affected; and (3) whether the appellant himself could be similarly affected in the future.
CT Page 8306
Waterbury Hospital, supra, 253 (footnote 5).
The Connecticut Supreme Court has found mootness overridden in sane cases, and not overridden in others depending on the facts of each case as applied to the general test as stated above. See, Water Resources Commission v. Connecticut Sand Stone Corporation,170 Conn. 27 (1975) (merits allowed to be reached on pollution suit although pollution had been abated by the defendant); Liistro v. Robinson,170 Conn. 116 (1976) (.decision of whether inmates entitled to bail pending parole hearing allowable although inmates received parole prior to appeal); Taylor v. Robinson, supra, 691 (same outcome as Liistro); Delevieleuse v. Manson, supra, 434 (merits allowed to be decided pertaining to inmate credits although plaintiff had finished serving sentence); Connecticut Foundry Co. v. International Ladies Garment Workers Union, supra, 17 (merits not reachable on injunction of employer as there was no reasonable expectation that defendant's illegal activity would reoccur); Waterbury Hospital v. Connecticut Health Care Associates, supra 247 (merits on injunction against picketers not allowable as strike had ended); Shays v. Local Grievance Committee, 197 Conn. 566 (1985) (merits of appeal on constitutional issue not reachable as there is no basis for claiming act was capable of repetition yet evading review); Hartford Principals' Suprvisors' Association v. Shedd, supra, 492 (merits on mid-term disputes of contract unreachable as contract collective bargaining agreement had expired ).
A recent Connecticut Appellate case has considered a situation which bears similarity to the instant case. The mootness of the claim was overridden by the facts of the case. Orsi v. Senatore, supra, 400. In Orsi, the fate of a child in the custody of the Department of Children and Youth Services (hereinafter "DCYS") was being decided. The foster mother had brought an action as the child's next friend, to preclude the state from removing the child from foster care and placing him back in the care of his grandmother. The child had been in the custody of DCYS since his birth in early 1989, and had been returned to the care of his grandmother previously, and consequently removed for various reasons. DCYS asserted that the claim brought by the foster mother, that back-to-family placement procedures of DCYS were unconstitutional, had been mooted by the fact that the child had been returned to his grandmother's custody where he would remain. The court stated:
 `In the absence of a class action, the capable of repetition, yet evading review doctrine is limited to the situation where two elements combined: (1) the challenged action [is] in its duration too short to be fully litigaged [litigated] prior to CT Page 8307 its cessation or expiration, and (2) there [is] reasonable expectation that the same complaining party would be subjected to the same action again.' (citations omitted) "In deciding whether to invoke this mitigating principle, we [consider] not only the practical difficulties of timely judicial review but also (1) the public importance of the question presented; (2) the potential effect of the ruling on an ongoing program of the state's penal or civil system; and (3) the possibility of a similar effect on the plaintiff himself. . .' (citations omitted) `These three mitigating factors must all be present in order for the "capable of repetition" exception to apply.' (citation omitted) We conclude that they are present here.
 There is no question that the action we are asked to review is of great public importance and that our decision will have an impact on the state's foster care system. We focus, therefore, on the third prong of this analysis, the possibility of a similar back-to-family placement affecting Christopher.
Orsi, supra, 425.
The court then concluded that the case does meet the third prong of the test due to the history of the child's case, and the fact that he is still in the custody of DCYS, even though he has been placed in his grandmother's care. Id.
Although the plaintiff in the instant case has been officially discharged from the custody of the defendant, he may very well be placed in custody once again. The mental illness of the plaintiff has not ended, but has merely been controlled for the present time with medication. This particular medication has only recently begun to be utilized in illnesses similar to the plaintiff's. It is not unreasonable to expect that the medication may cause side effects which would prevent its use in the future by the plaintiff, as long term effects are not yet known. In addition, the plaintiff is still indigent, and therefore it would be necessary for him to seek mental health care from a state institution, should that care be required in the future. Given the history of the plaintiff, it is not unreasonable to believe that he may require institutional care from the defendant in the future. Also, without resolution of this issue, the plaintiff may avoid seeking needed care from the defendant in the future, which would be detrimental to the plaintiff and others in his situation as well as the public in general. CT Page 8308
The court finds that all of the elements of the "capable of repetition yet evading review" doctrine are present. Most of the challenged actions are of too short a duration to be fully litigated prior to cessation; there is reasonable expectation that the plaintiff would be at least placed in the position where he would be exposed to the same action again; treatment in state mental facilities is a matter of public importance; these issues can potentially effect an ongoing state program, and finally, the court cannot conclude that there is no possibility of the plaintiff being similarly involved in the future. See Orsi, supra, 425.
The combination of facts and circumstances have fulfilled all of the foregoing requirements necessary to override mootness in the non-class action before the court.
For these reasons, the court is issuing an opinion in this case, on the merits, even though the plaintiff has officially been discharged from the custody and control of the defendant, Department of Mental Health.
Judgment may enter accordingly.
Richard A. Walsh, J.